#24335-a-JKK

**2009 SD 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

DAWN MAREE SHEPARD,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SCOTT P. MYREN
Judge

* * * *

LAWRENCE E. LONG
Attorney General

JOHN M. STROHMAN
Assistant Attorney General                   Attorneys for plaintiff
Pierre, South Dakota                         and appellee.

JASON R. ADAMS of
Tschetter & Adams Law Office, PC             Attorneys for defendant
Sioux Falls, South Dakota                    and appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 27, 2009

OPINION FILED **06/24/09**

#24335

KONENKAMP, Justice

[¶1.]      In defendant's jury trial for aggravated assault, the victim testified that defendant fired a rifle at him when he was on her boyfriend's property. Defendant and her boyfriend, on the other hand, testified that defendant never shot at the victim, that the victim was not on the property, and that defendant did not own a rifle. Defendant appeals her conviction on several grounds. We affirm.

## Background

[¶2.]      Delton Hitchcock and his girlfriend, Dawn Shepard (defendant), lived on Hitchcock's farm near the Huntersville Hutterite Colony. Hitchcock and defendant claimed that young men from the colony had been causing problems on the farm, including damaging property and killing cats. Learning of these complaints, Glenn Wipf, a young man from the colony, went to Hitchcock's farm on April 20, 2005, to tell Hitchcock and defendant that he was not the one causing the problems. While at the residence, according to Wipf, defendant fired a .22 caliber rifle in the air. He also said that defendant shot around his feet while Hitchcock stood next to her. Unharmed, Wipf walked back to his pickup and returned home.

[¶3.]      Before Wipf arrived back at the colony, George Waldner, the colony leader, received a call from defendant. According to Waldner, defendant was talking so frantically that he could not understand all she said. Waldner did hear defendant say, "I shot at Glenn." But he could not discern whether she said, "I missed him" or something else. When defendant hung up on Waldner, he tried calling her back, but the phone was busy and remained busy. Waldner spoke with Wipf about the shooting once Wipf arrived at the colony. Wipf also spoke with his

-1-

father. Neither Wipf nor Waldner reported the incident to any law enforcement agency.

[¶4.]      At some point after the shooting, Hitchcock made an appointment to talk to Waldner. Hitchcock was late for his appointment and, according to Waldner, when Hitchcock arrived he claimed that he was late because he had to calm defendant down after the shooting. Hitchcock left the meeting with no resolution. Thereafter, defendant and Hitchcock complained to the Brown County Sheriff's Department about the young men from the colony causing problems at the farm. A sheriff's deputy, Gary Bunt, went to the Hitchcock farm to investigate. Hitchcock and defendant told Deputy Bunt about all the acts they thought the young men were committing. They did not mention to the deputy any shooting at Wipf.

[¶5.]      After leaving the Hitchcock residence, Deputy Bunt went to the colony to inquire further. He spoke with Waldner. Waldner told Deputy Bunt about the shooting. Deputy Bunt had no prior knowledge of what Waldner was talking about and asked for additional details. While he was at the colony, the deputy then began an investigation of the shooting. He spoke with Wipf and examined Wipf's shoe. The deputy noticed some metal material in the back sole of one boot and took the boots as evidence.

[¶6.]      After speaking with Waldner and Wipf, Deputy Bunt left the colony to speak with Hitchcock and defendant about the shooting. Hitchcock denied having any knowledge of a shooting. He also would not allow Deputy Bunt to speak with defendant without a warrant. A warrant was obtained and a search conducted on the property. During the search, law enforcement officers found no rifle, but did

find three spent .22 caliber rifle shells. Defendant told law enforcement officers that Wipf had not been there, she had not shot at him, and owned no .22 caliber rifle. Defendant was arrested and charged with aggravated assault in violation of SDCL 22-18-1.1(5).

[¶7.] During the jury trial, Deputy Bunt, defendant, Hitchcock, Waldner, Wipf, and Wipf's father testified, among others. Over defendant's objection, Waldner was permitted to testify about what Wipf said to him when Wipf returned to the colony after the shooting. Defendant also challenged the chain of custody for the metal fragments removed from Wipf's boot. Deputy David Fair had taken the metal fragments to the State Crime Lab in Pierre by delivering them there himself. The fragments were in three bags, all placed into a larger bag. After the State's forensic expert, David Lindman, tested the fragments, Deputy Fair testified that he personally repackaged the fragments because of a concern about moisture damage. In order to repackage the evidence, Deputy Fair cut the evidence tape with Lindman's initials. He removed the evidence from the three smaller plastic bags Lindman had placed them in and relocated them to three smaller manila envelopes. The three smaller manila envelopes were put into one larger envelope. At trial, the deputy admitted that his repackaging was an error. Defense expert, Larry Dehus, testified that there was an evidentiary "disconnect," causing a lack of a continuing chain of custody. The State argued that the chain of custody was sufficient because no tampering had been shown. The circuit court agreed and admitted the evidence.

[¶8.] At the close of the case, and after the court denied defendant's motion for a judgment of acquittal, the jury returned a guilty verdict and defendant was

-3-

sentenced. Defendant filed her notice of appeal on November 22, 2006. On March 5, 2007, she moved this Court for a remand, which was granted on April 17, 2007. The remand order allowed the circuit court to consider an assessment of costs issue and defendant's motion for a new trial based on newly discovered evidence. On August 27, 2007, defendant moved for a new trial and for assessment of costs. Defendant claimed that certain newly discovered evidence, Lindman's bill submitted to the State after the trial for his services as an expert, proved that Lindman did not examine the metal fragments in Wipf's shoe. The court denied defendant's motion for a new trial, concluding that the evidence was merely impeaching, and therefore, not adequate grounds for a new trial.

[¶9.] Defendant appeals on grounds that the court abused its discretion when it (1) denied her objection to the chain of custody for the metal fragments, (2) allowed Waldner's hearsay statements, and (3) failed to grant her motion for a new trial. Defendant further contends that there is insufficient evidence to sustain the verdict.[1]

## Analysis and Decision

[¶10.] When Deputy Fair tore open the evidence packages, sealed with Lindman's signature, he weakened the chain of custody for those pieces of evidence. Lindman testified that he always marks evidence packaging on the seal so he knows

---

1. We review a court's chain of custody decision, *State v. Reay*, 2009 SD 10, ¶22, 762 NW2d 356, 363, evidentiary rulings, *State v. Engesser*, 2003 SD 47, ¶15, 661 NW2d 739, 746, and denial of a motion for a new trial, *State v. Reyes*, 2005 SD 46, ¶25, 695 NW2d 245, 254, under the abuse of discretion standard. A claim of insufficient evidence, however, is reviewed de novo. *State v. Morse*, 2008 SD 66, ¶10, 753 NW2d 915, 918 (citations omitted).

that the evidence contained therein is the exact evidence he tested. With his signature seal being broken, and the packaging changed, Lindman could only testify that the evidence appeared to be the same. Lindman did, however, provide rebuttal deposition testimony clarifying that, based on the explanation he received regarding Deputy Fair's repackaging, he could state with certainty that the evidence was the same. Deputy Fair was able to locate the three smaller plastic bags from which he had taken the evidence. These bags were shown to Lindman during his deposition. Lindman recognized the three plastic bags. Defendant, nonetheless, insists that because the chain of custody was broken, the State could not "demonstrate with reasonable probability that no tampering or substitution had occurred."

[¶11.]     We recently addressed the issue of chain of custody in *State v. Reay*, 2009 SD 10, ¶¶22, 25-26, 762 NW2d 356, 363-64. For evidence to be admissible, a perfect chain of custody is not required. Rather, "'the trial judge must be satisfied in reasonable probability that the object sought to be admitted is the one involved in the case, and that it has not changed in important respects.'" *Id.* ¶22 (quoting State v. Serl, 269 NW2d 785, 788 (SD 1978) (citing State v. Christmas, 83 SD 506, 510, 162 NW2d 125, 127 (1968))). Therefore, the State must establish that "'the real evidence offered is that object which was involved in the transaction, and that the object is in a substantially unchanged condition.'" *Id.* ¶25 (quoting *Serl,* 269 NW2d at 789). Moreover, the testimony "must at least 'strongly suggest the exact whereabouts of the exhibit at all times[.]'" *Serl,* 269 NW2d at 789 (quoting Butler v. State, 289 NE2d 772, 777 (IndCtApp 1972)).

[¶12.]	Just as in *Reay*, defendant here has failed to show that the challenged evidence was in some way altered or tampered with. *See Reay*, 2009 SD 10, ¶26, 762 NW2d at 364. She merely contends that because the chain of custody was broken, the *State* cannot prove that the evidence *has not* been tampered with or changed in any material respects. Lindman, the expert for the State who last examined the evidence, and whose signature seal was broken, testified that based on the explanation he received regarding the chain of custody, he was certain the evidence offered was the same as the material he tested. There being nothing to suggest that the evidence had been tampered with or altered, we cannot say that the court abused its discretion when it admitted the evidence, despite the impaired chain of custody. Moreover, defendant has failed to show specific prejudice as a result of admitting the evidence.

[¶13.]	Defendant next contends that the court abused its discretion when it admitted the hearsay testimony of George Waldner. Wipf testified at trial about the shooting. During his testimony he explained that after the shooting he returned to the colony and spoke with the colony leader, Waldner. When Waldner was called to testify, the State asked him about his conversation with Wipf. Defendant objected, contending that the testimony was hearsay. After an off-the-record bench conference, the court, on the record, declared the testimony admissible. Whether the court considered the evidence hearsay or not, or admissible on some hearsay exception, is unknown. Nonetheless, we review the court's admission of the statements under the abuse of discretion standard. *See* State v. Engesser, 2003 SD 47, 661 NW2d 739 (discussing admissibility of hearsay testimony).

[¶14.] Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3). Waldner's testimony about what Wipf told him was clearly hearsay. And we find no hearsay exception warranting admission of this testimony. Waldner's testimony went beyond saying that he and Wipf had a conversation, or that because the conversation occurred, it proved that Wipf returned to the colony after the shooting. Waldner detailed what Wipf said to him about what happened when defendant shot at him. The statements were made by Wipf, not Waldner, and were offered to prove the truth of the matter, i.e., that defendant shot at Wipf. The court abused its discretion when it admitted this hearsay testimony.

[¶15.] Nonetheless, the State contends that the erroneous admission of the hearsay was harmless error because the testimony was cumulative and not prejudicial. In particular, the State relies on the fact that Deputy Bunt testified about his conversation with Wipf after the shooting, which testimony was substantially the same as that admitted erroneously through Waldner. Defendant, on the other hand, argues that she was prejudiced because Waldner's testimony vouched for the credibility of Wipf and invaded the province of the jury.

[¶16.] Based on our review of the testimony of Waldner, Deputy Bunt, and Wipf, we find that substantially the same testimony was admitted during the trial without objection, and therefore, the error was harmless. Deputy Bunt testified to what Wipf told him about the shooting. And Wipf testified in person at trial on the same subject. "Where inadmissible evidence admitted at trial is cumulative only

and other admissible evidence supports the result, the cumulative evidence, though inadmissible, is nonprejudicial." State v. Tribitt, 327 NW2d 132, 135 (SD 1982) (citing In re Matter of N.J.W., 273 NW2d 134, 138 (SD 1978); In re Matter of D.T., 89 SD 590, 599, 237 NW2d 166, 171 (1975); Alberts v. Mutual Serv. Casualty Ins. Co., 80 SD 303, 315, 123 NW2d 96, 103 (1963)). Being substantially the same as testimony admitted elsewhere in trial, Waldner's erroneously admitted hearsay warrants no reversal.

[¶17.] Defendant next argues that the court abused its discretion when it denied her motion for a new trial based on newly discovered evidence. After the trial, the State's expert, Lindman, submitted a bill for his services. In reviewing that bill, defendant noticed that Lindman did not charge for a forensic examination of the evidence. Lindman testified at trial that he performed an examination. Therefore, the defendant argued that this newly discovered bill proved that Lindman did not examine the evidence, and without his testimony, there would have been insufficient evidence to convict defendant beyond a reasonable doubt.

[¶18.] The State concedes that the bill is evidence that was not discovered at the time of trial. But the State asserts that because defendant filed a notice of appeal to this Court, SDCL 15-30-1 required defendant to file her motion for a new trial within sixty days of a remand from this Court. After defendant filed a notice of appeal, we issued an order of remand on April 17, 2007. Defendant filed her motion for a new trial with the circuit court on August 27, 2007, clearly beyond sixty days from April 17.

[¶19.]　　　　SDCL 15-30-1 is a rule of civil procedure governing the disposition of appeals to the Supreme Court. The rule provides that "the Supreme Court may remand the record to the trial court for the purpose of making [a motion for a new trial], *but no such remand shall be made unless such motion can be made and hearing thereon had in the trial court within sixty days from and after the date on which the time for appeal commences.*" *Id.* (emphasis added). The State claims the emphasized language limits the defendant's time to file a motion for a new trial after a motion for remand is granted. On the contrary, the language only restricts the Supreme Court's ability to issue an order of remand. There being no rule specifically restricting the time a defendant may bring a motion for a new trial after a remand order from this Court, we will consider the merits of defendant's claim.

[¶20.]　　　　To succeed on a motion for a new trial based on after-discovered evidence, a defendant must prove that "(1) the evidence was undiscovered by the movant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused the movant to fail to discover the evidence earlier." State v. Reyes, 2005 SD 46, ¶28, 695 NW2d 245, 255 (quoting State v. Gehm, 1999 SD 82, ¶13, 600 NW2d 535, 540). There is no dispute that Lindman's bill submitted after the trial was evidence undiscovered by defendant at the time of trial, satisfying the first element. The second element, however, requires the evidence to be material and not merely impeaching. In denying defendant's motion, the circuit court found the evidence to be merely impeaching. We see no abuse of discretion in the court's decision. Lindman testified at trial that he performed the forensic examinations.

Thus, any questions regarding his billing for that examination would be used for impeachment purposes. The bill does not *prove* that Lindman did not perform the examinations, and therefore, is not material evidence that would probably produce an acquittal.[2]

[¶21.] Lastly, defendant argues that there was insufficient evidence to support the jury's guilty verdict. Defendant asserts that the State failed to prove that she ever possessed or shot a .22 caliber rifle. The State also failed to connect the shell casings to her, according to defendant, because no fingerprints were ever found on the casings. She believes the State did not connect the metal fragments in Wipf's boot to the shell casings found at the farm and did not test the fragments for soil or other foreign material to support the theory that shots ricocheted off the ground. Taking all the evidence as a whole, and the doubts that exist, defendant maintains that the evidence is insufficient.

[¶22.] Aggravated assault consists of "[a]ttempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm[.]" SDCL 22-18-1.1(5). We review a claim of insufficient evidence de novo. State v. Morse, 2008 SD 66, ¶10, 753 NW2d 915, 918 (citations omitted). However, we view the evidence

---

2. At the hearing on the motion for a new trial, the State offered into evidence a pretrial bill from Lindman to Deputy Fair at the Brown County Sheriff's office, dated February 20, 2006. Defendant objected on hearsay grounds and the court sustained the objection, in part. The court allowed admission of the bill, not for evidence that Lindman performed the forensic examination, but as proof that Lindman billed Brown County for certain services, which included a forensic examination. Despite the fact that the bill was admitted only for purposes of proving that Lindman billed for certain services, it is reasonable to infer that the State would have offered this bill had defendant

(continued . . .)

in a light most favorable to the prosecution, in support of the verdict. *Id.* The evidence in this case is partly circumstantial. Wipf testified that defendant shot at him. Wipf had metal fragments in the soles of his shoes. An expert testified that some of the fragments were consistent with bullet fragments. A search of the Hitchcock residence, where defendant resided, revealed several .22 caliber shell casings. Waldner testified that defendant called him, talking frantically and stating that she shot at Wipf. Defendant concedes she called Waldner. While no gun was found, there was sufficient evidence in the record to support the jury's guilty verdict.

[¶23.]     Affirmed.

[¶24.]     GILBERTSON, Chief Justice, and ZINTER, MEIERHENRY and SEVERSON, Justices, concur.

_____

(. . . continued)
    attempted to impeach Lindman at trial on whether he performed the
    examination.