#26030-a-LSW

**2012 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

JEREMY ZEPHIER,                    Defendant and Appellant.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CLAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ARTHUR L. RUSCH
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

MATT T. ROBY
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


DAVID M. HOSMER
Yankton, South Dakota                    Attorney for defendant
                                        and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 9, 2012

OPINION FILED **02/29/12**

#26030

WILBUR, Justice

[¶1.]    Jeremy Zephier appeals his aggravated assault conviction arguing that the trial court abused its discretion in denying his (1) proposed jury instruction and (2) motion for a new trial. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

[¶2.]    Zephier was at Donita Wika's Vermillion apartment drinking beer with friends on a Friday evening. That same evening, Julia Marshall, Zephier's former girlfriend, was with her new boyfriend, Carlos Diaz. Marshall and Diaz visited several bars in downtown Vermillion where both consumed alcohol. When the bars closed, both Marshall and Diaz attended a house party. However, Marshall left the party without Diaz and went over to Wika's apartment which was located across the hall from her own apartment. Marshall continued to consume alcohol with Zephier, Wika, and their friends.

[¶3.]    When Diaz realized Marshall had left the party, he went to her apartment complex to look for her. When Marshall did not answer her door, Diaz went across the hall to Wika's apartment where he heard noise and suspected Marshall was inside. Almost immediately after entering the apartment, Zephier attacked Diaz by striking him several times in the face with his fist and kicking Diaz when he fell to the ground.

[¶4.]    With the exception of the foregoing, many of the relevant facts were subject to conflicting evidence at trial.* The evidence presented by Zephier

---

*    The relevant conflicting testimony includes:

(continued . . . )

attempted to portray Diaz as an unwanted intruder into the apartment. Therefore, according to Zephier, his force was justified as self-defense and to prevent Diaz from trespassing. In contrast, the State presented evidence that Zephier had no legal justification for his use of force because Diaz simply went to Wika's apartment looking for Marshall.

[¶5.]        Before submitting the issue to the jury, the trial court rejected Zephier's proposed instruction regarding when it is lawful to use force in preventing a trespass. The rejected instruction provided, in relevant part:

> Under certain circumstances it is lawful to use or attempt or offer to use force or violence upon or toward the person of another. The force or violence may be employed . . . . In preventing or attempting to prevent *any trespass* . . . .

(Emphasis added.)

[¶6.]        Although the trial court rejected Zephier's instruction, it gave the jury South Dakota Criminal Pattern Jury Instruction 2-9-1. This instruction provided, in relevant part:

> Under certain circumstances it is lawful to use or attempt or offer to use force or violence upon or toward the person of another . . . . In preventing or attempting to prevent *an illegal*

_____

( . . . continued)
1.    What Marshall said and how she looked when she arrived at Wika's apartment. Zephier and Wika testified that Marshall was sweaty and out of breath when she arrived and stated that Diaz had been "stalking" her that night. Marshall testified that Diaz was not stalking her that night.
2.    Whether Diaz knocked on Wika's door and/or whether an occupant told Diaz he could enter the apartment.
3.    How intoxicated Marshall was upon her arrival.

> *attempt* by force to take or injure property in a person's lawful possession . . . .

(Emphasis added.)

[¶7.] The jury convicted Zephier of aggravated assault. Following the conviction, Zephier filed a motion for a new trial on the basis of an irregularity in the proceeding and newly discovered evidence. The trial court denied Zephier's motion. Zephier appeals to this Court arguing that the trial court abused its discretion in denying his proposed instruction and his motion for a new trial.

## ANALYSIS AND DECISION

[¶8.] **1.** **Whether the trial court abused its discretion in denying Zephier's proposed jury instruction.**

[¶9.] Zephier argues that the trial court abused its discretion in denying his proposed instruction because, according to Zephier, his proposed instruction was a correct statement of the law. "[W]e generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions . . . ." *Fix v. First State Bank of Roscoe*, 2011 S.D. 80, ¶ 10, 807 N.W.2d 612, 615-16 (quoting *Bertelsen v. Allstate Ins. Co.*, 2011 S.D. 13, ¶ 26, 796 N.W.2d 685, 695).

[¶10.] The substantive difference between Zephier's proposed instruction, and the instruction given to the jury, is that the given instruction did not provide that "force or violence may be employed . . . [i]n preventing or attempting to prevent *any* trespass" as Zephier requested. (Emphasis added.) Rather, the language in the given instruction limited when force or violence is justified in preventing a trespass.

#26030

[¶11.]    In denying Zephier's proposed instruction in favor of the pattern instruction, the trial court relied on SDCL 22-18-4, which provides:

> Any person is justified in the use of force or violence against another person when the person reasonably believes that such conduct is necessary to prevent or terminate the other person's trespass on or other criminal interference with real property or personal property lawfully in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she has a legal right to protect. . . .  A person does not have a duty to retreat if the person is in a place where he or she has a right to be.

The trial court reasoned that, based on the language of SDCL 22-18-4, Zephier's proposed instruction was overinclusive as to when an individual may use force to prevent a trespass.  We agree.

[¶12.]    SDCL 22-18-4 has several limitations as to when force or violence may be used to "prevent or terminate" a trespass.  Specifically, an individual may only use force to prevent or terminate a

> trespass on or other criminal interference with real property or personal property *lawfully* in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she *has a legal right* to protect.

(Emphasis added.)

[¶13.]    Zephier's proposed instruction misstates the law by omitting the limitations contained in SDCL 22-18-4 and providing that force or violence may be employed in preventing or attempting to prevent *any* trespass.  In contrast to Zephier's instruction, the jury instruction given by the trial court reflects the limiting language contained in SDCL 22-18-4 by providing an individual may use force "[i]n preventing or attempting to prevent an *illegal* attempt by force to take or

-4-

injure property in a person's *lawful possession*." (Emphasis added.) Thus, the trial court did not abuse its discretion in denying the proposed instruction and giving the pattern jury instruction.

[¶14.] **2. Whether the trial court abused its discretion in denying Zephier's motion for a new trial.**

[¶15.] Zephier argues he is entitled to a new trial for two reasons: (1) misconduct on the part of his attorney and (2) newly discovered evidence. We review a trial court's denial of a motion for a new trial under the abuse of discretion standard. *State v. Corean*, 2010 S.D. 85, ¶ 18, 791 N.W.2d 44, 52.

[¶16.] Zephier's first argument for a new trial is that his trial counsel's decision to argue self-defense, as opposed to defense of others, was misconduct on the part of his attorney. According to Zephier, this alleged "misconduct" created an irregularity in the proceeding and is thus grounds for a new trial under SDCL 15-6-59(a)(1), which provides:

> A new trial may be granted to all or any of the parties and on all or part of the issues for . . . [i]rregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

[¶17.] Even assuming that his trial counsel's tactical decision was not the best choice, it does not rise to the level of misconduct. We have noted that "[t]he 'selection of a defense is a trial strategy,' and as such this Court will seldom reevaluate trial counsel's choice." *Denoyer v. Weber*, 2005 S.D. 43, ¶ 21, 694 N.W.2d 848, 856 (quoting *Hofer v. Class*, 1998 S.D. 58, ¶ 15, 578 N.W.2d 583, 586). Moreover, we have previously found attorney misconduct in the context of SDCL 15-6-59(a)(1) only in situations when counsel made "repeated and intentional violations

of [a] trial court's orders . . . ." *Loen v. Anderson*, 2005 S.D. 9, ¶ 7, 692 N.W.2d 194, 196. This isolated tactical decision does not rise to a level of creating an "irregularity in the proceedings" which prevented Zephier from "having a fair trial." Therefore, the trial court did not abuse its discretion in denying Zephier's motion for a new trial based on attorney misconduct.

[¶18.]     Zephier's second argument for a new trial centers on alleged newly discovered evidence. According to Zephier, a detective he hired talked to Zephier's sister on Facebook. During the Facebook conversation, Zephier's sister allegedly stated that several weeks after the incident Marshall told her a different version of events than what she testified to at trial.

[¶19.]     To prevail on a motion for a new trial based on after-discovered evidence, Zephier must prove that "(1) the evidence was undiscovered by [him] at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused [him] to fail to discover the evidence earlier." *Corean*, 2010 S.D. 85, ¶ 18, 791 N.W.2d at 51 (quoting *State v. Shepard*, 2009 S.D. 50, ¶ 20, 768 N.W.2d 162, 167). In general, granting a motion for a new trial based on newly discovered evidence is "extraordinary relief" which "should be granted only in exceptional circumstances and then only if the requirements are strictly met." *Id.*

[¶20.]     The trial court issued a memorandum opinion detailing five reasons for which it was denying Zephier's motion for a new trial based on newly discovered evidence. Most notably, the trial court found that the "sole purpose of the claimed newly discovered evidence would be to . . . try [to] impeach Julia Marshall" and that

given the number of other witnesses, the claimed inconsistent statement would have been cumulative.  We agree.  Consequently, Zephier has not proven all the necessary factors to warrant a new trial based on newly discovered evidence.

## CONCLUSION

[¶21.]     Because the trial court did not abuse its discretion in denying Zephier's proposed jury instruction nor his motion for a new trial, we affirm.

[¶22.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.