#29740-a-SRJ
**2022 S.D. 28**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                        Plaintiff and Appellee,

    v.

DAVID PAUL TIMMONS,                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BOBBI J. RANK
Judge

\* \* \* \*

BRAD SCHREIBER
Pierre, South Dakota                        Attorney for defendant and
                                            appellant.


JASON R. RAVNSBORG
Attorney General

JONATHAN K. VAN PATTEN
Assistant Attorney General
Pierre, South Dakota                        Attorneys for plaintiff and
                                            appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 21, 2022
OPINION FILED **05/18/22**

#29740

JENSEN, Chief Justice

[¶1.] David P. Timmons was charged with aggravated assault arising from a physical altercation with his girlfriend, K.C., during which K.C. claimed Timmons choked her. At trial, Timmons moved for a judgment of acquittal arguing the evidence was insufficient to show that he attempted to place K.C. in fear of death or imminent serious bodily harm by choking her. The circuit court denied the motion and the jury found Timmons guilty of aggravated assault. After the trial, Timmons filed a motion for a new trial based upon a letter sent by K.C. to the court prior to sentencing stating that she felt manipulated and threatened by the prosecution to testify. The circuit court denied the motion. Timmons appeals his conviction arguing that the circuit court erred in denying his motion for judgment of acquittal and his motion for a new trial. We affirm.

**Facts and Procedural History**

[¶2.] On the morning of April 9, 2020, K.C. was at Timmons's residence. The two were dating at the time and had a child together. Timmons was 35 years old. K.C. was 19 years old.

[¶3.] Timmons was sleeping in a bedroom while K.C. was on her phone in the living room with the television on. Timmons woke up and became angry with K.C., claiming the television was too loud. Timmons was also upset because he believed that K.C. was always on her phone. Timmons and K.C. began arguing and Timmons took K.C.'s phone away. K.C. grabbed her phone back and tried to walk away, but Timmons grabbed her arm. The altercation escalated, and Timmons grabbed both of K.C.'s arms. K.C. yelled at Timmons, shoved, and hit him.

-1-

Timmons pulled K.C. to the floor onto her stomach and hit her face on the floor. While K.C. was on her stomach, Timmons pulled K.C.'s arms behind her back and pulled her hair. K.C. testified that Timmons then attempted to restrain her by wrapping his arm around her neck. This caused K.C. to feel like she was unable to breathe and that she was going to pass out. K.C. also bit Timmons's thumb during the altercation.

[¶4.]	K.C. called 911 approximately one hour after the altercation. During the 911 call, K.C. sounded shaken up and upset while describing that Timmons had choked and hit her. Officer Jonathan Brill responded to the call and met with K.C. at her grandparents' home. Officer Brill observed that K.C. was visibly shaken and her speech was broken up. K.C. told Officer Brill that Timmons hit her face on the floor, held her down with her arms behind her back, and pulled her hair. She stated that she bit Timmons's thumb to get him off of her. She also told Officer Brill that she felt like she was unable to breathe and believed that she might pass out when Timmons's arm was wrapped around her neck. She also explained to EMS that Timmons had strangled her. Officer Brill took pictures of K.C.'s injuries, which included a cut on her lower lip, scratches on her neck, and bruises on her legs, neck, and arms.

[¶5.]	Officer Brill also spoke with Timmons as part of his investigation. Timmons told Officer Brill that K.C. had attacked him and she tried to bite his thumb off. Officer Brill observed a cut on Timmons's thumb. Timmons stated that K.C. sustained her injuries from sex the night before the altercation. Timmons also

reported that K.C. would ask him to choke her and pull her hair during their sexual encounters.

[¶6.] Timmons was arrested, and the court set bond and ordered that Timmons have no contact with K.C. Timmons was indicted for aggravated assault in violation of SDCL 22-18-1.1(8) and the offense was designated as one involving domestic abuse under SDCL 25-10-1(1). The State also filed a part II information alleging Timmons had a prior conviction for attempted fourth-degree rape.

[¶7.] A two-day jury trial began on March 11, 2021. At trial, the State introduced the statements made by K.C. and Timmons to Officer Brill about the assault, as well as photographs of their injuries. A recording of K.C.'s 911 call was also introduced into evidence. K.C. testified that Timmons had choked her while she was pinned to the floor and that she was frightened during the altercation. K.C. admitted that the incident was a "mutual physical confrontation" and that she did not think Timmons was trying to hurt her. K.C. testified that Timmons put his arm around her neck to restrain her. She also explained that she felt like she could not breathe, but could still talk, and that she felt like she was going to pass out "a little bit." K.C. admitted that she hit and pushed Timmons during the altercation and that she could have caused his bruising by trying to push him away.

[¶8.] K.C. also admitted that she and Timmons had contact throughout the case, including just a few days before trial. Despite the no contact order, K.C. explained that Timmons had contacted her and pressured her to lie to the police by telling them that her injuries came from rough sex. K.C. stated that she and Timmons planned for her to write text messages to Timmons every other week

detailing how she likes rough sex in order to get the charges dropped. K.C. also testified that she did not have sex with Timmons on the night before April 9 and that her injuries were not from a sexual encounter with him. The State called two of K.C.'s friends who testified that they heard a phone call on April 10, 2020, between Timmons and K.C. where Timmons told K.C. to lie to police and tell them it was just rough sex.

[¶9.]		On cross-examination, K.C. admitted that she regretted calling the police because she loves Timmons and he is the father of their child. K.C. testified that she had been "kind of" manipulated and pressured by friends and family into testifying against Timmons, but she was ultimately told to tell the truth. Defense counsel asked K.C. about her interactions with the State as follows:

> Q: Okay. How many times have you met with the prosecutor's office about your testimony today?
> A: Like, five or six times.
> Q: Yeah. You've talked to them quite a bit, haven't you?
> A: Yeah.
> Q: They've been concerned about what you were going to testify to today, haven't they?
> A: Yeah.
> Q: Okay. Went over what your testimony was going to be?
> A: Yeah.

[¶10.]		At the close of the State's evidence, Timmons moved for a judgment of acquittal arguing he was merely trying to restrain K.C. from attacking him, and there was no evidence that he intended to strangle K.C. or place her in fear of death or imminent bodily harm. The court denied the motion determining there was evidence from which the jury could find beyond a reasonable doubt that the elements for aggravated assault under SDCL 22-18-1.1(8) had been met. The jury found Timmons guilty of aggravated assault under SDCL 22-18-1.1(8), a class 3

felony. Timmons admitted the part II information, thereby enhancing his potential maximum punishment to the level of a class 2 felony.

[¶11.] The court ordered a presentence investigation report (PSI). As a part of the PSI, K.C. submitted a letter of support for Timmons. In K.C.'s letter, she stated that she felt like she was lied to, manipulated, and threatened by the State's prosecutor. K.C. stated that "she [threatened] to put me in prison for 30 years." K.C. wrote that she did not want to call the cops, was coming down from meth, and did not believe that Timmons deserved a heavy sentence. She believed that "[Timmons's] [intentions] were not to hurt me." On April 26, 2021, the circuit court sentenced Timmons to fifteen years in the penitentiary with three years suspended. The court entered a judgment of conviction for aggravated assault and indicated the offense involved domestic abuse as required by SDCL 25-10-34.

[¶12.] Timmons timely filed a motion for a new trial pursuant to SDCL 23A-29-1. Timmons asserted that K.C.'s letter constituted a surprise and newly discovered evidence as set forth in SDCL 15-6-59(a)(3) and (4). Timmons requested the court to conduct a hearing to allow K.C. to testify on her allegations. The State opposed the motion. The State denied it had threatened K.C. but acknowledged a discussion with K.C. that she could be charged with perjury if she testified falsely. The circuit court denied the motion for a new trial. The circuit court concluded that the letter was not surprise evidence or newly discovered evidence that justified a new trial because Timmons could have discovered the evidence before trial based upon his extensive contact with K.C. The court also determined the letter was

cumulative and merely impeached K.C., and it would not have probably led to an acquittal.

[¶13.]      Timmons appeals arguing (1) the circuit court erred in denying his motion for judgment of acquittal because there was insufficient evidence to support his aggravated assault conviction, and (2) the circuit court abused its discretion in denying his motion for a new trial because K.C.'s letter was a surprise and newly discovered evidence under SDCL 15-6-59(a).

## Analysis

### 1.      *Whether the circuit court erred in denying Timmons's motion for judgment of acquittal.*

[¶14.]      This Court reviews "'a denial of a motion for judgment of acquittal de novo.'" *State v. Frias*, 2021 S.D. 26, ¶ 21, 959 N.W.2d 62, 68 (citation omitted). "[A] motion for a judgment of acquittal attacks the sufficiency of the evidence[.]" *State v. Wolf*, 2020 S.D. 15, ¶ 12, 941 N.W.2d 216, 220. In evaluating the sufficiency of the evidence, this Court considers "[w]hether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt . . . ." *Id.* ¶ 13, 941 N.W.2d at 220 (quoting *State v. Carter*, 2009 S.D. 65, ¶ 44, 771 N.W.2d 329, 342).

[¶15.]      A person is guilty of aggravated assault under SDCL 22-18-1.1(8) if he "[a]ttempts to induce a fear of death or imminent serious bodily harm by impeding the normal breathing or circulation of the blood of another person by applying pressure on the throat or neck, or by blocking the nose and mouth[.]" Timmons asserts that the evidence was insufficient to show that he attempted to induce a fear of death or imminent serious bodily harm because K.C. did not testify that she

was in fear of death or serious bodily harm. The State argues K.C.'s testimony that Timmons wrapped his arm around her neck and impeded her breathing was sufficient to show that Timmons attempted to place K.C. in fear of death or imminent serious bodily harm by choking.

[¶16.]    This Court has not previously addressed whether the language in SDCL 22-18-1.1(8), "[a]ttempts to induce a fear of death or imminent serious bodily harm by impeding the normal breathing[,]" requires a showing that the alleged victim must be placed in actual fear. However, we have discussed similar language in SDCL 22-18-1.1(5), which defines an aggravated assault as an "[a]ttempt[ ] by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm[.]" We have explained that "[t]he gravamen of the offense is the *attempt* to put a person in fear of imminent serious bodily harm." *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D. 1988). "Actual fear of imminent serious bodily harm is not an essential element of the offense." *Id.* "[A]n attempt to put another in fear exists when the defendant does 'any act toward the commission of the crime but fails or is prevented or intercepted in the perpetration thereof.'" *State v. Scott*, 2019 S.D. 25, ¶ 19, 927 N.W.2d 120, 127 (citation omitted). Similarly, the plain language of SDCL 22-18-1.1(8) provides that an attempt to place the victim in fear of death or imminent serious bodily harm by impeding the victim's breathing is sufficient to prove an aggravated assault. "The State need not prove 'actual fear of imminent serious bodily harm'" to prove aggravated assault under SDCL 22-18-1.1(8). *Id.* (citation omitted).

[¶17.]     There was sufficient evidence for the jury to find beyond a reasonable doubt that Timmons attempted to place K.C. in fear of death or imminent serious bodily harm by wrapping his arm around K.C.'s neck and impeding her breathing while she was pinned to the floor.  K.C. testified that she was frightened during the assault, and that she struggled to breathe and felt like she was going to pass out.  The jury also heard the 911 call where K.C. sounded upset as she described Timmons choking her.  Further, the jury watched Officer Brill's interview with K.C. where she described that she "couldn't breathe at all" and felt like she was close to passing out.  Officer Brill testified that K.C. appeared shaken up from the assault.  The jury also observed photos of K.C.'s injuries that showed bruising on her neck, arms, and legs and a cut lip.  These photos of her injuries were consistent with K.C.'s description of Timmons's actions.

[¶18.]     Timmons asserts that K.C.'s testimony that he was trying to restrain her and her admission that she hit him and bruised him shows that he did not attempt to cause fear of death or imminent serious bodily harm to her.  Rather, in his view, this evidence shows that he was attempting to restrain her from injuring him.  When reviewing the record, we do not "resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence on appeal."  *Wolf*, 2020 S.D. 15, ¶ 13, 941 N.W.2d at 220 (citation omitted).  Rather, this Court "accept[s] [the] evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict."  *Scott*, 2019 S.D. 25, ¶ 18, 927 N.W.2d at 127 (citation omitted).  At Timmons's request, the jury was given a self-defense instruction based on K.C.'s testimony regarding her actions and photos of Timmons's injuries.  The

jury rejected the theory of self-defense and determined that Timmons was guilty of aggravated assault. The evidence, and reasonable inferences therefrom, supports the jury's determination that Timmons attempted to place K.C. in fear of imminent serious bodily harm or death when he pinned her to the floor, wrapped his arm around her neck, and impeded her breathing.

### 2. *Whether the circuit court abused its discretion in denying Timmons's motion for a new trial.*

[¶19.] This Court reviews the circuit court's "denial of a motion for a new trial under the abuse of discretion standard." *State v. Zephier*, 2012 S.D. 16, ¶ 15, 810 N.W.2d 770, 773 (citation omitted). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *State v. Miller*, 2014 S.D. 49, ¶ 11, 851 N.W.2d 703, 706 (citation omitted). "[T]he decision whether to grant a new trial is within the sound discretion of the trial court, 'whose superior knowledge of all the facts and circumstances of the case enables him to know the requirements of justice.'" *State v. Lodermeier*, 481 N.W.2d 614, 626 (S.D. 1992) (citation omitted). "We review a circuit court's denial of a motion for a new trial under SDCL 23A-29-1, the same as its civil counterpart SDCL 15-6-59(b)." *State v. Shelton*, 2021 S.D. 22, ¶ 27, 958 N.W.2d 721, 730 (quoting *State v. Muhm*, 2009 S.D. 100, ¶ 43, 775 N.W.2d 508, 523).

[¶20.] Timmons initially argues that the circuit court erred by failing to hold an evidentiary hearing on the contents of the letter before denying the motion for a new trial. The procedure for granting or denying a motion for a new trial in criminal proceedings is contained in SDCL 23A-29-1, which cross-references to

SDCL 15-6-59(b) in the Rules of Civil Procedure. SDCL 15-6-59(b) permits the circuit court to extend the time for considering a motion for new trial, but neither SDCL 23A-29-1 nor SDCL 15-6-59(b) requires the court to conduct a hearing before ruling on the motion for a new trial. Rather, SDCL 15-6-59(b) permits a circuit court to take no action on a motion for a new trial, and a motion for a new trial is deemed automatically denied if the circuit court fails to timely rule upon the motion. *See Bridgewater Quality Meats, L.L.C. v. Heim*, 2007 S.D. 23, ¶ 10, 729 N.W.2d 387, 392 (reviewing an automatic denial of a motion for a new trial after the circuit court failed to rule on the motion for an abuse of discretion).

[¶21.]     It was within the court's discretion to determine the necessity of holding a hearing on the motion for a new trial. Other jurisdictions have found that "[g]enerally, a hearing is not required on a motion for a new trial." *Busey v. U.S.*, 747 A.2d 1153, 1168 (D.C. 2000) (explaining that the rule governing a motion for a new trial in criminal proceedings does not mandate a hearing, therefore, "a trial court is not required to hold a hearing before ruling on such a motion" (citations omitted)); *see also Story v. State*, 788 P.2d 617, 622 (Wyo. 1990) (finding that there is no due process requirement for a hearing on all motions for a new trial).

[¶22.]     In denying the motion for a new trial, the circuit court relied upon the evidence and proceedings at trial in considering whether the letter from K.C. presented grounds for a new trial and determined the letter did not constitute newly discovered or surprise evidence. "When there is evidentiary support for the circuit court's findings underlying its decision to deny a motion for a new trial, this Court finds no abuse of discretion." *Shelton*, 2021 S.D. 22, ¶ 27, 958 N.W.2d at 730.

The circuit court properly exercised its discretion in declining to hold a hearing on the motion for a new trial.

[¶23.]    Timmons relied upon the grounds set forth in SDCL 15-6-59(a)(3) and (4) in his motion for a new trial.  On appeal, Timmons asserts the same grounds arguing that the circuit court erred by failing to grant a new trial because K.C.'s letter was an "[a]ccident or surprise which ordinary prudence could not have guarded against"; and "[n]ewly discovered evidence, material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial[.]"  SDCL 15-6-59(a)(3)-(4).  Timmons claims the letter shows that K.C.'s testimony would have been different without the State's alleged coercion and her uncoerced testimony could have resulted in a judgment of acquittal.

[¶24.]    The circuit court did not abuse its discretion in denying the motion for a new trial based on surprise.  "To constitute grounds for new trial[,] accident or surprise must be such that ordinary prudence could not have guarded against it." *Egan v. Shindelbower*, 73 S.D. 212, 215, 41 N.W.2d 225, 226 (1950).  Timmons cross-examined K.C. about her interactions with the State.  K.C. admitted to meeting five or six times with the State and testified that she felt "kind of" manipulated into testifying by friends and family.  Timmons did not inquire further at trial concerning her testimony that she felt manipulated or about her interactions with the State.  Further, Timmons cannot claim surprise because K.C.'s testimony was similar to the statements contained in her letter.  Finally, Timmons's bare assertion that he was surprised by K.C.'s letter does not show how the allegations in K.C.'s letter would have probably changed the outcome at trial.

[¶25.]   "To succeed on a motion for a new trial based on after-discovered evidence, a defendant must prove that '(1) the evidence was undiscovered by the movant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) that it would probably produce an acquittal; and (4) that no lack of diligence caused the movant to fail to discover the evidence earlier.'" *State v. Corean*, 2010 S.D. 85, ¶ 18, 791 N.W.2d 44, 51 (quoting *State v. Shepard*, 2009 S.D. 50, ¶ 20, 768 N.W.2d 162, 167). "[N]ew trial motions based on newly discovered evidence request extraordinary relief; they should be granted only in exceptional circumstances and then only if the requirements are strictly met." *Id.* ¶ 18, 791 N.W.2d at 51–52 (quoting *State v. Gehm*, 1999 S.D. 82, ¶ 15, 600 N.W.2d 535, 540). "Courts have long been skeptical of new trial motions asserting 'newly discovered' evidence when [defendants] fail to exercise reasonable diligence to discover the evidence beforehand." *Gehm*, 1999 S.D. 82, ¶ 16, 600 N.W.2d at 541 (citation omitted).

[¶26.]   K.C.'s letter does not constitute newly discovered evidence that warranted a new trial. Evidence that is merely cumulative is not newly discovered and does not constitute grounds for a new trial. *State v. Beynon*, 484 N.W.2d 898, 906 (S.D. 1992). K.C.'s comments in her letter mirrored much of her testimony on cross-examination and highlighted her reluctance to testify about the assault, which was evident from her trial testimony. Even where the evidence truly is newly discovered, "we have repeatedly held . . . [that] a new trial is not warranted" in cases where the "newly discovered evidence would merely impeach or discredit a trial witness[.]" *Lodermeier*, 481 N.W.2d at 628. Here, K.C.'s letter was cumulative

impeachment evidence and did not reveal new evidence that would be material to Timmons's conviction. *See Zephier*, 2012 S.D. 16, ¶ 20, 810 N.W.2d at 774 (denying a new trial because the evidence would be used to impeach the witness and was cumulative).

[¶27.]     Additionally, Timmons's request for a new trial was properly denied because he failed to show that the alleged coercion by the State could not have been discovered before trial through reasonable diligence. *See Corean*, 2010 S.D. 85, ¶ 18, 791 N.W.2d at 51. Despite the no contact order, Timmons and K.C. remained in contact throughout the case and communicated about how to get his charges dropped. Further, Timmons had the ability to discover any alleged threats by the State from K.C. by inquiring into her meetings with the State during his cross-examination of K.C.

[¶28.]     Timmons also argues that K.C.'s letter suggests that she testified falsely. This Court has explained "[i]f the court believes that the testimony given by a material witness was false, that without such false testimony the jury might reach a different conclusion, and that the party seeking a new trial was taken by surprise by the false testimony or did not learn of its falsity until after trial, then it would be the duty of the court to set aside the verdict and grant a new trial." *Stabler v. First State Bank of Roscoe*, 2015 S.D. 44, ¶ 34, 865 N.W.2d 466, 483 (quoting *Pickering v. State*, 260 N.W.2d 234, 235 (S.D. 1977)). However, Timmons identifies nothing in the letter that recants K.C.'s testimony or conveys that she testified falsely. Rather, the letter communicates her regret for testifying, asks the

court to impose a lenient sentence, and explains her personal belief that both her and Timmons were at fault in the altercation.

[¶29.]     Finally, the circuit court did not abuse its discretion in concluding that the letter would not have probably produced an acquittal. *See State v. Feuillerat*, 292 N.W.2d 326, 332–33 (S.D. 1980) (finding that the evidence that a witness allegedly perjured himself did not warrant a new trial because "there was no new evidence which would convince the trier of facts that a different verdict would probably result"). In addition to K.C.'s testimony, the jury saw photos of K.C.'s injuries, watched her interview with Officer Brill where she described the altercation and appeared shaken up. The jury also heard K.C.'s 911 call and testimony from the 911 operator describing K.C.'s report of the altercation, and heard from two other witnesses on Timmons's attempted manipulation of K.C. The letter did not reveal any new evidence that would have probably led to an acquittal in light of the evidence presented at trial. As such, the circuit court did not abuse its discretion in denying the motion for a new trial.

[¶30.]     We affirm.

[¶31.]     KERN, SALTER, and MYREN, Justices, concur.

[¶32.]     DEVANEY, Justice, deeming herself disqualified, did not participate.