#28979-a-JMK
**2020 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

MASON J. BRYANT,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON SOGN
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

BRIGID C. HOFFMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


CHRISTOPHER MILES of
Minnehaha County Public
    Defender's Office
Sioux Falls, South Dakota                 Attorneys for defendant and
                                          appellant.

* * * *

                                          CONSIDERED ON BRIEFS
                                          FEBRUARY 11, 2020
                                          OPINION FILED **08/19/20**

#28979

KERN, Justice

[¶1.]     Mason Bryant was found guilty by a jury of two counts of aggravated assault and three counts of simple assault. As part of Bryant's sentence, the circuit court ordered him to pay restitution to Medicaid for its coverage of the victim's medical expenses. Bryant appeals, alleging several evidentiary errors, including an argument that the circuit court erred by considering Medicaid as a victim entitled to receive restitution. We affirm.

## Facts and Procedural History

[¶2.]     On the morning of June 9, 2017, Mason Bryant was trying to find Emily Smedsrud, with whom he had a three-year-old daughter, R.B., in order to drop R.B. off with her mother while he attended a job interview. Bryant called Smedsrud several times and received no answer. Hoping to locate Smedsrud, Bryant called her mother's fiancé, Kenneth Rogers. Rogers lived in an apartment with Smedsrud's mother, Chloye Smedsrud-Stelzer. Rogers answered the phone and Bryant inquired if Smedsrud was at their apartment. Rogers told Bryant that Smedsrud was not there. However, Smedsrud arrived at the apartment a brief time later with a friend, Tommy Lund.

[¶3.]     In the early afternoon, Bryant arrived at Smedsrud-Stelzer's and Rogers's second-floor apartment with R.B. Smedsrud answered the door and talked to Bryant in the doorway. Bryant began yelling at Smedsrud because he could not find her earlier in the day and she did not answer his phone calls. Bryant walked into the apartment, saw Lund sitting at the kitchen table, and began berating Lund about an unpaid bill he owed to a mutual friend. Rogers, who was sitting in a

nearby recliner, told Bryant to stop yelling. Bryant responded by tipping over the recliner, which caused Rogers to roll onto the ground. Rogers got up and told Bryant to get out.

[¶4.] Bryant then walked out of the apartment and down the stairs, yelling as he went. Rogers followed him, yelling that Bryant was not welcome back to the apartment. Bryant stopped walking just outside the apartment building and turned around to face Rogers. The two men stood toe-to-toe, hollering at each other. At the time of the fight, Bryant was the larger of the two men, standing five feet, nine inches tall and weighing 200 pounds, while Rogers was five feet, six inches tall and weighed 170 pounds.

[¶5.] Bryant shoved Rogers to the ground. When Rogers returned to his feet, Bryant looked as though he was going to shove him down again, so Rogers head-butted Bryant, causing Bryant's glasses to fall to the ground. As Bryant reached down for his glasses, he pulled out a pocket knife and stabbed Rogers twice in the abdomen. Bryant swung the knife a few more times, scratching Rogers, who was unaware he had been stabbed until he felt something wet running down his shirt. Bryant fled the area in his car.

[¶6.] Smedsrud was watching the confrontation from the apartment window on the second floor. Thinking a fistfight was occurring, she ran down the stairs to break it up. As she did so, she saw Bryant pull a knife back from Rogers and put it in his pocket. Realizing that Rogers was bleeding and seriously injured, she called 911 for an ambulance. Rogers returned to the apartment, taking a seat at the kitchen table to wait for the ambulance. Officer Andrew Parrott, the first to arrive,

assessed the situation and then began interviewing witnesses until Detective

Patrick Mertes, the lead investigator, took charge of the scene.

[¶7.]         After Bryant drove away from the apartment building, he called his

mother and a friend.  His mother encouraged him to turn himself in, so he called

the non-emergency law enforcement line to report the incident.  Bryant explained

that he had stabbed Rogers in self-defense and wished to surrender to the police.

He remained on the phone as he drove to the Law Enforcement Center in Sioux

Falls, where he was detained upon arrival.  Detective Erin McGillivray questioned

him about the fight.  Although no physical injuries were visible, Detective

McGillivray directed an officer to photograph Bryant's alleged injuries.  After

speaking with Bryant, Detective McGillivray conferred with Detective Mertes, who

then arrested Bryant for aggravated assault.

[¶8.]         In the meantime, an ambulance took Rogers to Avera McKennan

Hospital, where he was treated for two major stab wounds to his abdomen.  Rogers

underwent surgery for the wounds and spent two days in the hospital.

Approximately two months later, Rogers developed a hernia and an infection in the

upper part of his abdomen, which required a second surgery and further care for

complications from the original injury.

[¶9.]         Bryant was indicted on three counts of aggravated assault: SDCL 22-

18-1.1(1) (extreme indifference), SDCL 22-18-1.1(2) (dangerous weapon), and SDCL

22-18-1.1(4) (serious bodily injury); and three counts of simple assault: SDCL 22-18-

1(1) (attempted bodily injury), SDCL 22-18-1(2) (recklessly caused bodily injury),

and SDCL 22-18-1(5) (intentionally caused bodily injury).

[¶10.]     A three-day jury trial began on December 17, 2018. The State called thirteen witnesses to testify, including several who had witnessed portions of the altercation. The State also introduced into evidence Bryant's statements to the police regarding the incident. During his testimony, Rogers described his yelling match and physical contact with Bryant and testified that Bryant stabbed him in the stomach several times. He explained that because of the stabbing, he had to endure two surgeries resulting in significant medical expenses. Smedsrud testified about her contacts with Bryant on the day of the incident, including her recollection of Rogers and Bryant yelling at each other and her observation of Bryant pulling the knife back from Rogers.

[¶11.]     Lund testified that he saw Bryant push Rogers and swing his arm toward Rogers's stomach at least two times before quickly leaving. An uninvolved party, Tylor DeJong, testified that as he was driving by, he saw two men standing toe-to-toe, and then he noticed that the men were on the ground. DeJong turned his car around and drove by a second time. He heard Rogers state he had been stabbed and saw Bryant quickly leaving.

[¶12.]     When the State rested, Bryant made a motion for judgment of acquittal, which the circuit court denied. At the end of the trial, Bryant moved for a mistrial based on statements made by the State during closing argument. The court denied the motion. The jury acquitted Bryant of aggravated assault under SDCL 22-18-1.1(1), but convicted him of aggravated assault under subdivisions (2) and (4). The jury also convicted Bryant of simple assault under SDCL 22-18-1(1), SDCL 22-18-1(2), and SDCL 22-18-1(5).

[¶13.]    The circuit court held a two-day sentencing hearing, after which it imposed sentence on only one count of aggravated assault, SDCL 22-18-1.1(2) (dangerous weapon). The court sentenced Bryant to serve twelve years in the penitentiary with three years suspended and credit for time served. The court also ordered Bryant to pay Medicaid $31,246.69 in restitution for Rogers's medical expenses.

[¶14.]    Bryant appeals, raising three issues, which we restate as follows:

1. Whether the circuit court committed plain error in finding that Medicaid qualified as a victim for purposes of restitution under SDCL 23A-28-2(5).

2. Whether the circuit court committed plain error by permitting testimony from Detectives Mertes and McGillivray that Bryant did not act in self-defense.

3. Whether the circuit court abused its discretion in denying Bryant's motion for a mistrial based on the prosecutor's statements during closing argument.

## Analysis and Decision

[¶15.]    When deciding whether to impose restitution, the circuit court held that Medicaid qualified as a victim under SDCL 23A-28-2(5), which provides that for purposes of restitution, a victim may include "any person who has by contract or statute undertaken to indemnify another[.]" Bryant argues that the circuit court erred as a matter of law in finding that Medicaid is a "victim" because Medicaid is administered by a state agency, the Department of Social Services (DSS), and does not qualify as a "person" under the definition set forth in SDCL 22-1-2(31). *See State v. Jones*, 2016 S.D. 86, ¶ 7, 888 N.W.2d 207, 208–09 (indicating that "a state

agency is not considered a person for purposes of this statute unless its property is the subject of the crime or petty offense at issue").

[¶16.]     The State submits that Bryant forfeited this argument by failing to raise his claim that Medicaid does not qualify as a victim under SDCL 23A-28-2(5) before the circuit court. The State asserts that Bryant instead objected only to the amount of restitution ordered based on the unavailability of Rogers's medical records at the time. During the first day of the sentencing hearing, Bryant's attorney stated:

> The other thing is that there's an issue on some of the restitution. Ms. Ehlers has furnished me with itemized statements. The State was originally asking for like $40,000 in Medicaid restitution and then we objected to that and they went through it and now it's down to $31,000. There is - -we dispute that too, but it involves charges from after January 1st of 2018 and those medical records haven't been provided and they aren't in the presentence report. I think if we can get those, we might be able to resolve that issue too, so that might be helpful to be able to have time to get those - - to get those records.

Having failed to raise the issue, the State argues that Bryant's claim may be reviewed only for plain error. *See State v. Buchhold*, 2007 S.D. 15, ¶ 17, 727 N.W.2d 816, 821 (providing that when an error is not preserved by objection, our review is limited to examining whether the circuit court committed plain error). If such review should occur, the State asserts there was no error, and even if error occurred, the restitution order did not constitute a "miscarriage of justice" or so infect "the entire trial that the resulting conviction violates due process." *See State v. Mulligan*, 2007 S.D. 67, ¶ 27, 736 N.W.2d 808, 818.

[¶17.]    In his reply brief, Bryant contends that although a "specific objection to the circuit court's restitution order" was not made, the objection was preserved by his argument to the circuit court on the second day of the hearing when he stated:

> And as far as the restitution, I mean if the Court's going to impose restitution, I would hope that the Court would allow him to keep his job . . . .  But if the Court wants to put him on probation and keep him working and make him pay restitution, I think that's fine.  That's another incentive for him to be employed, although I think again that Mr. Rogers doesn't have to pay that.  The State has to pay it.  It's - - obviously the State is the victim.  But it does put a substantial burden on him even to pay that; even if he is employed at this point since he's going to have to pay his child support . . . .  So I don't know that restitution is the appropriate thing, but I certainly don't think it's appropriate if he has penitentiary time and whatever other conditions the Court feels is appropriate.

Bryant denies that his trial counsel, in making this statement, conceded that Medicaid qualifies as a victim for restitution.[1]  Instead, Bryant believes his counsel was asking the court to recognize his concern that a state agency is not an appropriate victim for restitution purposes under the circumstances of this case.  Alternatively, Bryant argues that if this Court should find the issue forfeited, it was plain error to classify Medicaid as a victim.

[¶18.]    Upon review of the record, we find that Bryant did not object to restitution on the ground that Medicaid does not qualify as a victim under SDCL 23A-28-2(5).  "To preserve issues for appellate review litigants must make known to the [circuit] courts the actions they seek to achieve or object to the actions of the court, giving their reasons." *State v. Dufault*, 2001 S.D. 66, ¶ 7, 628 N.W.2d 755,

---

1.    Bryant's counsel on appeal was not trial counsel.

757. Bryant did not properly advise the circuit court of the reason for his objection and, therefore, forfeited this issue for review on appeal.[2]

[¶19.] Nevertheless, when "an issue has not been preserved by objection at trial," this Court may conduct a limited review to consider "whether the circuit court committed plain error." *Buchhold*, 2007 S.D. 15, ¶ 17, 727 N.W.2d at 821. "To establish plain error, an appellant must show '(1) error, (2) that is plain, (3) affecting substantial rights; and only then may this Court exercise its discretion to notice the error if, (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *State v. McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d 725, 729–30. "Additionally, with plain error analysis, the defendant bears the burden of showing the error was prejudicial." *Id.* "We invoke our discretion under the plain error rule cautiously and only in exceptional circumstances." *State v. Bariteau*, 2016 S.D. 57, ¶ 24, 884 N.W.2d 169, 177. Determining prejudice requires that we ask whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict[.]" *United States v. Olano*, 507 U.S. 725, 739, 113 S. Ct. 1170, 1780, 123 L. Ed. 2d 508 (1993).

[¶20.] Whether the criminal restitution statutes authorize payment to Medicaid is a question of statutory interpretation, which we review de novo. *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 8, 932 N.W.2d 135, 138. When

---

2. In the context of plain error, SDCL 23A-44-15 and Federal Rule of Criminal Procedure 52(b) are nearly identical. While interpreting Rule 52(b) and the difference between waiver and forfeiture, the United States Supreme Court has explained that "[w]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S. Ct. 1170, 1777, 123 L. Ed. 2d 508 (1993).

conducting this statutory interpretation, "we give words their plain meaning and effect, and read statutes as a whole." *Id.* ¶ 11, 932 N.W.2d at 139. "The purpose of statutory interpretation is to discover legislative intent." *State v. Mundy-Geidd*, 2014 S.D. 96, ¶ 5, 857 N.W.2d 880, 883. "[T]he starting point when interpreting a statute must always be the language itself." *State v. Livingood*, 2018 S.D. 83, ¶ 31, 921 N.W.2d 492, 499.

[¶21.]     Restitution in criminal cases is governed by SDCL chapter 23A-28. "It is the policy of this state that restitution shall be made by each violator of the criminal laws to the victims of the violator's criminal activities to the extent that the violator is reasonably able to do so." SDCL 23A-28-1. For purposes of restitution, victim is defined as:

> *any person, as defined in subdivision 22-1-2(31)*, who has suffered pecuniary damages as a result of the defendant's criminal activities, including any person who has by contract or by statute undertaken to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies. Any victim who has suffered pecuniary damages has priority claim as opposed to any person who has a claim to indemnity or subrogation as a result of the same defendant's criminal activity.

SDCL 23A-28-2(5) (emphasis added).

[¶22.]     SDCL 23A-28-2(5) specifically incorporates SDCL 22-1-2(31), which defines a person as:

> any natural person, unborn child, *association, limited liability company, corporation, firm, organization, partnership, or society.* If the term is used to designate a party whose property may be the subject of a crime or petty offense, it also includes the United States, any other country, this state, and any other state or territory of the United States, and any of their political subdivisions, agencies, or corporations . . . .

*Id.* (emphasis added).

[¶23.] Cabined by the definition of "person" as set forth above, we must first ask whether Medicaid is an "association, limited liability company, corporation, firm, organization, partnership, or society." *See id.* We have previously described Medicaid as "a joint state-federal *funding program* for medical assistance in which the Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume." *Meyer v. S.D. Dep't of Soc. Servs.*, 1998 S.D. 62, ¶ 20, 581 N.W.2d 151, 156 (emphasis added).[3]

[¶24.] Although comprehensive in scope, the plain language of SDCL 22-1-2(31) does not list any category of "person" that would include Medicaid as a funding program. And, as Bryant correctly notes, even if Medicaid could be categorized as a "subdivision, agency, or corporation" of the United States Government, it may not be considered a "person" unless the governmental entity's property is the subject of the crime. Here, Rogers is the subject of Bryant's crime— not Medicaid. Neither party claims the statutes are ambiguous, and we see no need to resort to statutory construction. *See Zoss v. Schaeffers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (indicating that statutory construction is unnecessary when the language is clear).

[¶25.] Applying the plain language of the statute, we conclude that the circuit court erred by finding that Medicaid falls within the definition of "person" set forth

---

3. *See* DSS, Medicaid State Plan,
http://dss.sd.gov/medicaid/medicaidstateplan.aspx. (last visited August 12, 2020).

in SDCL 22-1-2(31) and that the circuit court erred by finding that it did. However, this error does not require us to vacate the restitution award. Under the second prong of the plain error analysis, Bryant must prove that the error was plain. *See McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d at 729. "An error is 'plain' when it is clear or obvious." *Id.* ¶ 23, 931 N.W.2d at 732. This means that the court's decision must have been plainly wrong at the time of his sentencing hearing. *Id.*

[¶26.] Although we conclude that the definition of victim in SDCL 23A-28-2(5) is unambiguous, our cases discussing which types of entities qualify as victims for restitution purposes are not clear. This is especially true as it concerns the status of a third-party payor covering the medical expenses of another by contract or statutory duty. *Compare Jones*, 2016 S.D. 86, ¶ 8, 888 N.W.2d at 209 (concluding that the DSS, a state agency, did not meet the definition of a victim), *with State v. Galligo*, 1996 S.D. 83, ¶ 4, 551 N.W.2d 303, 303 (concluding Indian Health Services (IHS) did).

[¶27.] We examined the question whether a third-party payor, an insurance company, could qualify as a victim for purposes of restitution in *State v. Fryer*, 496 N.W.2d 54, 55 (S.D. 1993), *superseded by statute*, SDCL 23A-28-2(5). At the time, SDCL 23A-28-2(5) defined victim, in pertinent part, as "any person, . . . who has suffered pecuniary damages as a result of the defendant's criminal activities." *Fryer*, 496 N.W.2d at 55. In reversing the restitution ordered by the circuit court, the *Fryer* Court concluded that the health insurer was not a victim entitled to receive restitution and was only "indirectly affected by [the defendant's] actions because it insured [the victim]." *Id.* at 56. In 1995, the Legislature, in response to

*Fryer*, enacted the current version of SDCL 23A-28-2(5), expanding the definition of victim to include "any person who has by contract or by statute undertaken to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies."

[¶28.]    The following year, in *Galligo*, we addressed whether IHS could be a victim under SDCL 23A-28-2(5) as amended. 1996 S.D. 83, ¶ 4, 551 N.W.2d at 303. Although the Court determined that the 1995 amendment would make IHS "eligible to receive restitution," it reversed the restitution order because the circuit court retroactively applied the 1995 amendment. *Id.* ¶ 5, 551 N.W.2d at 303–04. Thus, the Court limited its analysis to the retroactivity issue and did not definitively address the broader question of what types of health insurers may be entitled to receive restitution.

[¶29.]    Then, in *In re M.D.D.*, we considered a challenge to a restitution order that arose out of a juvenile proceeding in which a youth injured another individual in a car accident. 2009 S.D. 94, 774 N.W.2d 793. Medicaid covered the victim's medical expenses, and the circuit court required the juvenile to pay restitution to Medicaid for these expenses as part of its dispositional order. In affirming the order, we addressed the difference between two statutes involving restitution: one applicable to criminal cases involving adults (SDCL 23A-28-2(5)) and the other applicable to juvenile proceedings (SDCL 26-8B-6(4)). With reference to SDCL 23A-28-2(5), we noted that the statute applied only to "a victim of 'criminal activities' of a 'defendant'" and did not "have application in juvenile proceedings." *In re M.D.D.*, 2009 S.D. 94, ¶ 4, 774 N.W.2d at 794. Because SDCL 26-8B-6(4), the juvenile

-12-

restitution statute, neither contained the term "victim" nor encompassed "language limiting or restricting the type of person or entity that may be reimbursed," we upheld the restitution order under the broader juvenile statute. *Id.* ¶ 6, 774 N.W.2d at 795.

[¶30.]      Several years later, in *Jones*, we addressed whether a state agency is considered a victim for purposes of restitution. 2016 S.D. 86, 888 N.W.2d 207. In *Jones*, the defendant was ordered to pay restitution to DSS for counseling and treatment costs incurred by his children as a result of his abuse. *Id.* The Court noted that the definition of a person under SDCL 22-1-2(31) did not include a state agency "for purposes of [SDCL 23A-28-2(5)] unless its property is the subject of the crime." *Id.* ¶ 7, 888 N.W.2d at 208–09 (citing SDCL 22-1-2(31)). However, the Court refrained from determining whether DSS qualified as a victim under SDCL 23A-28-2(5) because "the [circuit] court's [restitution] order was actually required by another statute." *Id.* ¶ 8, 888 N.W.2d at 209 (holding that the defendant pled guilty under SDCL 26-10-1, and therefore, SDCL 23A-28-12 explicitly required the defendant to pay treatment costs incurred by the victims).

[¶31.]      This lack of clarity may have been created, in part, by the affirmance of restitution awards involving third-party payors under statutes other than SDCL 23A-28-2(5) or on other available grounds. But today, the question of Medicaid's status as a victim under these statutes is directly before us, and we take this opportunity to declare the plain meaning of the statute. Medicaid, like private insurers, is statutorily required to indemnify eligible recipients by providing necessary coverage for medical expenses and is a third-party payor. SDCL 58-12-

26; SDCL 28-6-1. Yet, it does not fall within the Legislature's definition of "persons" in SDCL 22-1-2(31) entitled to receive restitution because it is neither an "*association, limited liability company, corporation, firm, organization, partnership, or society.*" (Emphasis added.) We cannot lift our judicial pens and amend unambiguous statutes. Instead, we leave that task to the body elected to make laws. *See Zoss*, 1999 S.D. 105, ¶ 6, 598 N.W.2d at 552 ("the court's only function is to declare the meaning of the statute as clearly expressed in the statute").

[¶32.] Because our precedent results in a mixed message as to the correct interpretation of the statute, the circuit court's reliance on these decisions in imposing restitution was not *plainly* erroneous. But even if it was, Bryant's argument also fails under prongs three and four of the plain error doctrine. The third condition of the analysis requires that the error be of such a magnitude that it affected Bryant's substantial rights. *McMillen*, 2019 S.D. 40, ¶ 13, 931 N.W.2d at 729–30. An error affects substantial rights if the defendant can "demonstrate that it affected the outcome of the [trial] court proceedings." *Puckett v. United States*, 556 U.S. 129, 134, 129 S. Ct. 1423, 1429, 173 L. Ed. 2d 266 (2009). If the defendant succeeds in showing a violation of substantial rights, then, and only then, do courts have "the *discretion* to remedy the error," but such discretion is only appropriately exercised when "the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* "Meeting all four prongs is difficult, as it should be." *Id.*

[¶33.] The circuit court required Bryant to pay restitution in the amount of $31,246.69 to Medicaid as reimbursement for Rogers's medical care. The restitution

order, which the court imposed *after* his conviction, did not affect the outcome of Bryant's jury trial, and we are not convinced that the court's restitution order impacts Bryant's substantial rights.

[¶34.]      The order also does not seriously affect the fairness, integrity, or public reputation of judicial proceedings, which is required to satisfy prong four of the plain error analysis. There is nothing illegitimate about requiring Bryant to reimburse Medicaid for the medical expenses Rogers incurred as a result of Bryant's decision to stab Rogers twice in the abdomen. We will not exercise our discretion to notice the error. We, therefore, deny his request to remand the case to the circuit court to vacate the restitution award.

### Remaining issues

[¶35.]      We have considered Bryant's additional issues pertaining to the testimony offered by law enforcement and the prosecutor's statements during closing argument, and having concluded they lack merit, we summarily reject them.

[¶36.]      GILBERTSON, Chief Justice, and JENSEN, SALTER, and DEVANEY, Justices, concur.