#29955-a-JMK
**2023 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

DAMEN LONG SOLDIER,                       Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSHUA K. HENDRICKSON
Judge

\* \* \* \*

BRADLEY T. BORGE
Rapid City, South Dakota                  Attorney for defendant and
                                          appellant.


MARTY J. JACKLEY
Attorney General

CHELSEA WENZEL
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 25, 2023
OPINION FILED **07/26/23**

#29955

KERN, Justice

[¶1.]    Damen Long Soldier entered a casino and held up the cashier on duty at gun point.  He pulled her behind the counter and struck her on the head with a pistol, causing her to fall to the floor.  After failing to open the cash register or find money in her pockets, he took her purse from a chair in the office and fled.  Long Soldier was convicted of first-degree robbery and sentenced to forty years.  On appeal, he argues that the circuit court erred by denying his motion for judgment of acquittal because the evidence was insufficient to meet the elements of the offense and sustain the conviction.  We affirm.

## Background

[¶2.]    On the morning of Sunday, November 22, 2020, 76-year-old Helga Harris was working by herself as a cashier at the Happy Jacks casino at 4036 Cheyenne Boulevard in Rapid City, South Dakota.[1]  She arrived at the casino and started her routine at 5:40.  She placed her purse on a chair in the office, completed paperwork, counted money, put money in the main and beer cash registers, cleaned, disinfected, and made coffee and popcorn.  She opened the casino at 7:00, sat in a chair at the end of the cashier's counter, approximately ten feet from her purse in the office, and watched television.

---

1.    Surveillance cameras captured video footage of the casino's interior from several angles.

[¶3.]        At approximately 10:40, a man later identified as Damen Long Soldier entered the casino through the back entrance[2] wearing a Pacman hoodie. When Harris asked to see his identification, he patted his pockets and left. Long Soldier reentered the casino through the back entrance a few minutes later with a mask over his face and his hoodie cinched tighter. He was carrying a pistol in his front pocket. He removed the pistol and pushed it into Harris's side, grabbing her left upper arm and shoving her from where she sat watching television to behind the bar where the cash registers were. He pointed at the beer cash register and hit Harris twice in the head with the pistol. Bleeding profusely, Harris covered her face and dropped to the ground. Long Soldier asked Harris where the money was and checked her pockets. She was not able to respond. He tried to open the beer cash register and said he was going to kill her.[3] Afraid for her life, Harris called out for Jesus several times. Pointing the pistol at her, Long Soldier backed away, took her purse from the office, and ran from the casino.

[¶4.]        After Long Soldier left, Harris managed to stand up and call 911 to report that she had been "held up" and was "bleeding to death" before apparently losing consciousness. She briefly seemed to regain consciousness and repeated "Help me!" before she stopped responding to the dispatcher. Officer Wyatt Derr was

---

2.    The casino has a front entrance that adjoins a Yesway convenience store as well as a back entrance.

3.    Surveillance videos show a small crown tattoo on Long Soldier's left hand and that his hand came into contact with the register, leaving prints. The parties stipulated to Long Soldier's identity on the casino and Yesway surveillance videos. Further, in order to reduce the number of witnesses at trial, Long Soldier agreed not to contest or object to the admissibility of testimony regarding his tattoo and the fingerprint evidence found at the scene.

the first to arrive to the scene. He also spoke with Harris later at the hospital. When she asked for her purse, she was surprised to learn it had been taken. Her head wounds required three staples to close, and she was treated for a dislocated hip as well. She continued to suffer from bruising and headaches at the time of trial ten months later.

[¶5.] Long Soldier was indicted by a Pennington County grand jury in December 2020 for one count of first-degree robbery in violation of SDCL 22-30-1. The State also filed a part II information, per SDCL 22-7-8.1, alleging Long Soldier had previously committed three or more non-violent felonies. He pleaded not guilty and denied the part II information. At the close of a two-day jury trial held September 29–30, 2021, the jury convicted Long Soldier of first-degree robbery.

[¶6.] Long Soldier moved for a judgment of acquittal on the grounds of insufficient evidence, arguing that the State had failed to prove the statutory elements of robbery because Harris's purse was not taken from her person or immediate presence. Further, Long Soldier argued that because Harris was unaware that her purse was taken, under SDCL 22-30-4 it could not have been taken against her will by means of fear or force. The court denied the motion, referencing two cases to support its ruling. *See State v. Stecker*, 79 S.D. 79, 84, 108 N.W.2d 47, 50 (1961) ("[I]f the taking of property from the person of another is accomplished by force, although the victim does not know what is being done, it is nevertheless robbery."); *State v. Larson*, 376 P.2d 537 (Wash. 1962) (upholding refusal of instruction that the term "will" required consciousness because taking property from someone already unconscious without violence would not be robbery,

but taking property from someone rendered unconscious by use of violence would be). Long Soldier admitted to the part II information alleging he had been convicted of four prior felonies. The court imposed a sentence of forty years and ordered Long Soldier to pay court costs and restitution.

[¶7.] Long Soldier raises a single issue on appeal, which we restate as follows: whether the circuit court erred by denying Long Soldier's motion for judgment of acquittal.

### Standard of Review

[¶8.] "This Court reviews 'a denial of a motion for judgment of acquittal de novo.'" *State v. Peneaux*, 2023 S.D. 15, ¶ 24, 988 N.W.2d 263, 269 (quoting *State v. Timmons*, 2022 S.D. 28, ¶ 14, 974 N.W.2d 881, 887). "[A] motion for a judgment of acquittal attacks the sufficiency of the evidence[.]" *Id.* (alterations in original) (quoting *Timmons*, 2022 S.D. 28, ¶ 14, 974 N.W.2d at 887). "In measuring the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *State v. Frias*, 2021 S.D. 26, ¶ 21, 959 N.W.2d 62, 68). "'[T]he jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence[,]' and 'this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.'" *Id.* (alterations in original) (quoting *Frias*, 2021 S.D. 26, ¶ 21, 959 N.W.2d at 68).

## Analysis

[¶9.]     Under South Dakota law, "[r]obbery is the intentional taking of personal property, regardless of value, in the possession of another from the other's person or immediate presence, and against the other's will, accomplished by means of force or fear of force, unless the property is taken pursuant to law or process of law." SDCL 22-30-1.[4] "To constitute robbery, force or fear of force must be employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery. The degree of force employed to constitute robbery is immaterial." SDCL 22-30-2. "The fear of force which constitutes an element of the offense of robbery may be . . . fear of an injury, immediate or future, to the person or property of the person robbed[.]" SDCL 22-30-3. "The taking of property from the person of another or in the immediate presence of the person is not robbery if it clearly appears that the taking was fully completed without the person's knowledge." SDCL 22-30-4.

[¶10.]     The circuit court advised the jury of the elements of first-degree robbery in instruction 17, which stated:

> The elements of the crime of robbery in the first degree, each of which the state must prove beyond a reasonable doubt, are that at the time and place alleged:
>
> 1.  The defendant intentionally took personal property in the possession of Helga Harris from her person or immediate presence.

---

4.     "Robbery, if accomplished by the use of a dangerous weapon . . . is robbery in the first degree." SDCL 22-30-6. "Robbery in the first degree is a Class 2 felony." SDCL 22-30-7.

2. The personal property was . . . taken against the will of Helga Harris who was in possession thereof, that is, with the knowledge of Helga Harris and against her wish.
3. The defendant accomplished such taking by use of force.
4. The defendant used a dangerous weapon.
5. The personal property was not taken pursuant to process or otherwise pursuant to law.

Long Soldier does not dispute the sufficiency of the evidence to prove the fourth and fifth elements of the charged offense as listed in jury instruction number 17 beyond a reasonable doubt. Rather, he challenges the sufficiency of the evidence on the first three elements of the offense based on his interpretation of the relevant statutes.[5]

[¶11.]       We review issues of statutory interpretation de novo. *State v. Bettelyoun*, 2022 S.D. 14, ¶ 16, 972 N.W.2d 124, 129. "The rules of statutory interpretation are well settled." *Id.* ¶ 24, 972 N.W.2d at 131. "The purpose of statutory interpretation is to discover legislative intent." *Id.* (quoting *State v. Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338). "[T]he starting point when interpreting a statute must always be the language itself." *Id.* (alteration in original) (quoting *Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d at 338). "We therefore

---

5.    In Long Soldier's briefs, he cites authority for the standard of review for statutory interpretation but no decisional law supporting his interpretation of the contested elements of these statutes. The State contends he waived his arguments by failing to do so. Long Soldier asserts that because these are issues of first impression, there is no controlling authority. Instead, he points to "logic and common sense" to support his claims. In presenting his argument, Long Soldier has analyzed the plain language of the relevant statutes (e.g., "[T]he phrase 'immediate presence' in SDCL 22-30-1 is used to modify the phrase 'in the possession of another.'") and cited dictionary definitions of nontechnical terms. We deem this sufficient to address the merits of his arguments.

defer to the text where possible." *Id.* (quoting *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (quoting *Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d at 13). "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *Id.* (quoting *State v. Thoman*, 2021 S.D. 10, ¶ 17, 955 N.W.2d 759, 767). "The rule of the common law that penal statutes are to be strictly construed has no application to [SDCL Title 22]. All its criminal and penal provisions and all penal statutes shall be construed according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22-1-1.

      1.    *Whether the purse was in Harris's possession when taken.*

[¶12.]      Long Soldier argues that the language "in the possession of another from the other's person or immediate presence" in SDCL 22-30-1 requires that the personal property be both (1) in the victim's possession *and* (2) either on their person or in their immediate presence.[6] He contends that, even if the purse was in Harris's immediate presence, it was not in her possession because she set it down in

---

6.    On one occasion during the State's closing argument, it stated, in the context of the possession element, that it only had to prove *either* that Long Soldier "intentionally took personal property in the possession of Helga Harris *or* from her person or immediate presence." (Emphasis added.) Long Soldier, however, did not object. In any event, the court informed the jury in instruction number 28 that "[i]f there is any inconsistency between what counsel might say about the instructions and the instructions which I gave you, you must accept my statement as being correct." "Juries are presumed to follow the instructions of the [circuit] court." *State v. Richmond*, 2019 S.D. 62, ¶ 42, 935 N.W.2d 792, 803 (alteration in original) (quoting *State v. Eagle Star*, 1996 S.D. 143, ¶ 22, 558 N.W.2d 70, 75).

the office and walked away, thereby relinquishing possession and never regaining it. He further contends that "the normally used definition of immediate would mean that [the property] has to be within an arm's reach or very close to that. Ten to fifteen feet away, the distance from where [Harris] was sitting and where she had stored her purse in the office, would exceed her immediate presence."

[¶13.] In framing its response, the State first notes that the jury did not receive a definition of possession and that the parties did not propose instructions defining it. Instead, the jury was instructed to consider "the evidence in light of your own observations and experience in the affairs of life" and reminded to use common sense in determining whether the elements were met. Citing *State v. Schmiedt*, the State argues that words in jury instructions need not be defined if they are of general use and are not technical terms. 525 N.W.2d 253, 255–56 (S.D. 1994) (upholding circuit court's denial of proposed jury instruction defining "attempt"). The State turns to dictionary definitions because "[w]hen a statute does not define a term, it should be construed according to its accepted usage, and a strained, unpractical or absurd result should be avoided." *In re Estate of Gossman*, 1996 S.D. 124, ¶ 6, 555 N.W.2d 102, 104. Citing *State v. Goodroad*, the State contends there is no statutory definition of possession in South Dakota. 442 N.W.2d 246 (S.D. 1989). In *Goodroad*, we noted in the context of a controlled substance that "'possession' is not statutorily defined in South Dakota[,]" and we indicated that it "signifies dominion or right of control . . . with knowledge of its presence and character." *Id.*, 442 N.W.2d at 251.

[¶14.]      The State, relying on *Sutton v. United States*, contends Long Soldier's construction of immediate presence is too narrow.  In *Sutton*, the court concluded there was sufficient evidence to show a carjacking victim's car was within the "immediate actual possession" of the victim who was forty-five feet away from it at the time of the crime and rejected the argument that the victim relinquished possession of the car when he walked away.  988 A.2d 478, 485, 488–89 (D.C. 2010).  The State urges this Court to reject an interpretation of immediate presence that would allow a defendant to avoid a robbery conviction "by luring their victim far enough away from the property to make [his or her] control more difficult or the application of force or fear more convenient."  *People v. Webster*, 814 P.2d 1273, 1288–89 (Cal. 1991) (en banc).

[¶15.]      The State also contends that Long Soldier's proposed definition of immediate presence is so narrow that it becomes synonymous with "from the other's person[,]" thus creating redundancy contrary to the principle that words in statutes should not be regarded as surplusage.  *Jensen v. Turner Cnty. Bd. of Adjustment*, 2007 S.D. 28, ¶ 12, 730 N.W.2d 411, 415.  The State cites *People v. Hayes* for a definition of immediate presence: "[a] thing is in the [immediate] presence of a person, in respect to robbery, which is so within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it."  802 P.2d 376, 406–07 (Cal. 1990) (alterations in original) (citations omitted).  The State suggests that being close enough to the property to resist taking, had there been no force, means it was within one's immediate presence.

[¶16.]        We agree that the plain language of SDCL 22-30-1 requires the property taken to be both in the possession of the victim and taken from either the victim's person or immediate presence.  Thus, property being in the victim's immediate presence would be insufficient to satisfy the element if the property was not also in the victim's possession.  In other words, a bystander in close proximity to a robbery who did not share possession of what was taken from the victim would not also be a victim.

[¶17.]        Next, we must resolve the questions of what constitutes possession and immediate presence.[7]  While "possession" is not statutorily defined in the context of first-degree robbery, other jurisdictions have construed possession broadly.  *See, e.g.*, *People v. Scott*, 200 P.3d 837, 841 (Cal. 2009) ("A person from whose immediate presence property was taken by force or fear is not a robbery victim unless, additionally, he or she was *in some sense* in possession of the property." (emphasis added)).  Although either party may selectively cite dictionary definitions in favor of their position, at least some such definitions are similarly broad.  *See, e.g.*, Possession, Black's Law Dictionary (11th ed. 2019) ("The fact of having or holding property in one's power; the exercise of dominion over property."); Possession, Merriam-Webster Dictionary (including among definitions "the act of having or taking into control[,]" "control or occupancy of property without regard to

---

7.    The State cites *People v. Scott*, 200 P.3d 837, 841–42, 846–47 (Cal. 2009), which incorporates both actual and constructive possession in its definition of possession as an element of robbery and declines to adopt a restrictive interpretation of possession.  Here, the purse belonged to Harris, not to Happy Jacks, so there is no need to consider whether she constructively possessed property that belonged to the casino.

ownership[,]" and "something owned, occupied, or controlled: PROPERTY").[8]  Long Soldier provides nothing but a reference to "common sense" to support his theory of relinquishment and his conclusory claim that Harris relinquished possession of her purse by setting it down on the chair in the office.  We have held that commonly understood words need not be defined in jury instructions, *see Schmiedt*, 525 N.W.2d at 255–56, and, in any event, Long Soldier did not request an instruction defining possession.

[¶18.]      Turning to immediate presence, the State has cited decisional law from other jurisdictions with robbery statutes that may or may not parallel SDCL chapter 22-30.  Long Soldier, pointing to one of these cases, which held that the evidence did not establish immediate presence as a matter of law, but left a question for the jury, concludes this supports his view that "it [is] clear that there is a lot of confusion about how to define 'immediate presence.'"  However, Long Soldier does not advance—and we cannot find—any law defining the term with mathematical precision.  This is perhaps because no defined distance would be appropriate, and we conclude this is a jury question rather than a question to be determined as a matter of law.  We know from the plain text of the statute that immediate presence contemplates some distance that extends beyond the person.  But immediate presence does not, any more than possession, require us to adopt an abstract definition that could conceivably encompass every factual scenario a jury

---

8.     https://www.merriam-webster.com/dictionary/possession (last visited July 18, 2023).

may face. Rather, it must be applied by the jury in consideration of the factual circumstances and context of the individual case before it.

[¶19.]     While, in denying Long Soldier's motion, the circuit court made no explicit finding that the purse remained in Harris's possession, our review confirms that the record supports the conclusion that the purse remained in Harris's possession and immediate presence, based on the common usage of those terms. Viewing the evidence in the light most favorable to the verdict, Harris was the only employee on duty at the time of the incident and the only person with a legitimate reason to enter the office during her shift. There were no customers in the casino, and she was seated just ten feet away from her purse when Long Soldier attacked her. Absent the use of fear or threat of force to overcome her resistance, Harris was aware of anyone entering the casino and she was positioned to maintain control of her purse.

> 2.     *Whether the purse was taken against Harris's will.*

[¶20.]     Long Soldier next argues for a similarly narrow interpretation of taken "against the other's will[.]" SDCL 22-30-1. He asserts that the uncontroverted evidence cannot support this element because Harris did not know that her purse was taken until Officer Derr told her at the hospital that it was gone—well after the taking was completed. Long Soldier argues that the circuit court's justifications for its reasoning that SDCL 22-30-4 was inapplicable were unclear. The circuit court explained that in its view, the purpose of SDCL 22-30-4 was to prevent "rolling an intoxicated person" from being defined as robbery. Synthesizing the holdings in *Stecker* and *Larson*, the court stated that "as a general rule when force is used it

doesn't really make a difference that he knows that an item was taken if the force left him in a position where he's not able to [resist]." Long Soldier claims the cases do not pertain to the issue or elucidate the "straightforward statement" in SDCL 22-30-4 "that if the taking of property was fully completed without the person's knowledge, it is not robbery."

[¶21.]    The State elaborates on the cases the court cited, arguing that the point of SDCL 22-30-4 is to distinguish robbery from larceny. It does not matter, according to the State, that Harris did not see Long Soldier take her purse from the office because any lack of knowledge on her part was due to his use of force. *See People v. Bartowsheski*, 661 P.2d 235, 244–45 (Colo. 1983) (en banc) (explaining that a victim need not be aware of the taking when force or fear was used to make the victim unaware). This construction aligns well with the precept that, unlike larceny, robbery is a crime against a person as well as property. *See* SDCL 22-1-1 (directive to construe criminal statute to effect object and promote justice).

[¶22.]    In *Stecker*, this Court explained:

> It was not necessary to a conviction to show that the victim was aware at the time that he was being robbed. Force or fear must be used to obtain possession of the property or to prevent or overcome resistance to the taking. The stealthy or secret taking of property from the person of another before the victim is aware of what is being done is not robbery. This is the intended distinction in the foregoing definition of the crime of robbery.

79 S.D. at 85, 108 N.W.2d at 50. Consistent with *Stecker*, jury instruction number 19 provided that "[t]he taking of property either from Helga Harris or from the immediate presence of Helga Harris is not robbery when it clearly appears that the taking was fully completed without Helga Harris' knowledge. The essential

element of taking by force or fear is absent." But here, Long Soldier did use force, and Harris knew he was trying to take property—any property he could obtain—from her. Long Soldier did not come upon an unconscious person and take her belongings without an act of force or fear of force. It was the force he used while trying to access money from the cash register or her pockets that left her incapacitated and unable to realize or resist what was happening at the time he took her purse. The act of taking was not "fully completed" without her knowledge. The evidence supports a determination that he was desperate to take anything and that leaving with her purse was the culmination of a continuous act of taking of which she was initially aware.

   3.   *Whether the taking was done by means of force or fear of force.*

[¶23.]   Without citation to authority, Long Soldier advances his reading of SDCL 22-30-2 to mean that: "[i]f someone acquires possession of personal property without using force or fear of force to possess that property, it is not robbery. This is true even if that person applied force or the fear of force earlier to attempt to acquire other personal property." This assertion is in turn based on his *paraphrased* version of the statute, which he submits provides that: "[i]n order for a person to be convicted of robbery, there has to be proof beyond a reasonable doubt that *when* that person obtained possession of the property, he had to use force or fear of force in order to obtain or retain that possession, or to prevent or overcome resistance to the taking of the property." (Emphasis added.) Long Soldier argues that "he stopped using force and fear of force when he left the area behind the bar. . . . He was able to obtain possession of the purse in the office without the use

of force or fear of force because no one was in the office and no one had possession of the purse when he took it."

[¶24.]     Long Soldier has distorted the meaning of the statute, which actually states: "[t]o constitute robbery, force or fear of force must be employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery. The degree of force employed to constitute robbery is immaterial." SDCL 22-30-2. Long Soldier's use of "when" would expand the statute to include a mandate that the taking and use of force or fear of force be simultaneous—something the text does not require. While the statute provides that the force cannot be used merely to escape, that caveat is inapplicable here.

[¶25.]     In this case, the use of force or fear of force preceded the taking. The evidence supports that Harris may have been able to prevent or resist Long Soldier's efforts to take property from the casino if not for his use of force or fear of force that allowed him to obtain control of her purse when it was only ten feet away from her. While Long Soldier initially may have employed force in order to overcome Harris's resistance to taking money from the register or her pockets, that same force prevented her resistance to taking her purse because by that time, he had pistol whipped her, and she was laying under the bar counter bleeding profusely. His contention that he had "stopped using force and fear of force" by the time he took her purse is unavailing. Harris's testimony and the recorded 911 call support a conclusion that Harris continued to fear for her life during the time he was in the office. To reward defendants who opportunistically take property after

-15-

incapacitating a victim in the pursuit of the victim's other property and allow them to avoid culpability for robbery would be unjust and defeat the object of SDCL 22-30-1 through SDCL 22-30-4.  *See* SDCL 22-1-1.

[¶26.]     After construing the relevant statutes "according to the fair import of their terms, with a view to effect their objects and promote justice[,]" SDCL 22-1-1, and "viewing the evidence in the light most favorable to the prosecution," *Peneaux*, 2023 S.D. 15, ¶ 24, 988 N.W.2d at 269, we conclude the jury "could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

[¶27.]     Affirmed.

[¶28.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.