#31018-r-SPM
**2025 S.D. 73**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellant,

    v.

AMANDA BITELER,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JENNIFER MAMMENGA
Judge

* * * *

DREW W. DEGROOT
THOMAS R. WOLLMAN
Deputy State's Attorney's
Canton, South Dakota                    Attorneys for plaintiff and
    appellant.


NICOLE J. GRIESE of
Griese Law Firm, P.C.
Sioux Falls, South Dakota                    Attorneys for defendant and
    appellee.

* * * *

ARGUED
NOVEMBER 17, 2025
OPINION FILED **12/22/25**

MYREN, Justice

[¶1.]		Amanda Biteler was arrested and charged with driving under the influence (second offense) and released on bond.  One of the conditions of her release was breath testing under the 24/7 alcohol monitoring program.  Biteler was eventually permitted to enroll in "remote breath," which allowed her to provide her required breath samples by remote testing.  When a remote breath enrollee submits a breath test, the testing device takes their photograph.  One of Biteler's test photographs was flagged because it did not appear that she was the person who blew into the testing device.  Biteler was charged with making a false report to law enforcement in violation of SDCL 22-11-9(3).  The magistrate court convicted her, and she appealed to the circuit court.  The circuit court reversed, reasoning that Biteler's 24/7 breath submission did not constitute a "report" under SDCL 22-11-9(3).  The State appeals.  We reverse the circuit court and reinstate the magistrate court's judgment of conviction.

## Factual and Procedural Background

[¶2.]		Biteler was arrested and charged with driving under the influence (second offense) in Lincoln County in March 2023.  As a condition of her bond, she was required to participate in the 24/7 alcohol monitoring program.  At first, Biteler was required to submit to in-person preliminary breath tests (PBT).  In September 2023, she was authorized to enroll in "remote breath."

[¶3.]		Remote breath is "a portable PBT unit" that allows qualifying 24/7 enrollees to complete their testing requirements wherever they choose.  Officer Jamie Smith, who oversees the 24/7 program in Lincoln County, testified that a

camera built into each portable PBT unit takes photographs of the person blowing into the unit to confirm that the person submitting the breath test is the person ordered to do so. The camera function will activate only when a user blows into the unit. Alcohol Monitoring System, Inc. (AMS) uses software to assess whether the face in the remote breath photograph matches the person who is supposed to be tested. Officer Smith explained that after the photograph is taken, the portable PBT unit automatically sends it to AMS for analysis. Law enforcement accesses and monitors the results of the breath tests and the photographs accompanying them.

[¶4.]     Officer Smith confirmed that Biteler was instructed how to use and care for the unit when she was given her portable PBT unit. His instructions included directions on the unit's photograph function and where Biteler needed to hold her head so the unit could take clear photographs of her face.

[¶5.]     On December 9, 2023, the AMS software flagged Biteler's evening remote breath submission. Officer Smith reviewed the photograph and became concerned that Biteler had manipulated her breath test because the photograph showed a malleable straw. This concerned Officer Smith because the straws on the remote breath-testing devices are not bendable. Officer Smith also noticed that Biteler did not have a straw in her mouth—meaning that her breath did not engage the photograph function on the device. Finally, Officer Smith noticed another face in the photograph behind Biteler's right shoulder.

[¶6.]     After reviewing this remote breath photograph, Officer Smith reviewed the other photographs that Biteler's remote breath device had captured. He found

five other instances in which he believed Biteler had manipulated the photograph and/or the breath test. On December 21, 2023, the State charged Biteler with six counts of false reporting to authorities under SDCL 22-11-9(3). That statute provides: "Any person who: . . . (3) Makes a report or intentionally causes the transmission of a report to law enforcement authorities which furnishes information relating to an offense or other incident within their official concern, knowing that such information is false; is guilty of false reporting to authorities." *Id.*

[¶7.] A court trial was held before the magistrate court on June 7, 2024. Officer Smith was the only witness who testified. Officer Smith described how the portable PBT unit functions and why Biteler's test results raised concerns. The State argued that each photograph, along with circumstantial evidence, satisfied the elements of SDCL 22-11-9(3). Biteler argued "[t]he law here was not intended for 24/7 violations[.]" She also argued that because each remote breath test and photograph she submitted was first sent to AMS, she did not file any report with law enforcement. Finally, Biteler argued that, given the coercive nature of 24/7 enrollment, she did not make a "report" as that word is used in SDCL 22-11-9(3).

[¶8.] Regarding the December 9 incident, the magistrate court determined: (1) that the photograph and breath sample were a "report" under SDCL 22-11-9(3); (2) that Biteler intentionally caused the transmission of that report to law enforcement; (3) that the report furnished information within the official concern of law enforcement; and (4) that Biteler knew the information in the report was false when she submitted it. The magistrate court convicted Biteler of the December 9 incident, but acquitted her of the remaining counts.

[¶9.]    Biteler appealed to the circuit court. She argued the term "report" in SDCL 22-11-9(3) was ambiguous. She also claimed that the statute required the State to present evidence that she engaged in an affirmative act when she reported information to law enforcement. In Biteler's view, complying with her 24/7 testing was not an affirmative act because the circuit court compelled it as a condition of her bond.

[¶10.]    The circuit court reversed Biteler's conviction. The circuit court began its analysis by concluding that the word "report," as used in SDCL 22-11-9(3), is not defined. The circuit court concluded that "report" is used as a noun and then consulted dictionary definitions to provide the plain meaning of that word. After defining "report" as "a formal oral or written presentation of the results of an investigation, research assignment, etc.[,]" the circuit court reasoned:

> While the evidence may have established that Appellant failed to comply with the terms of her participation in the 24/7 program by submitting or attempting to submit a breath sample that was not her own, the issue comes down to whether, by doing so, Appellant made a report or intentionally caused the transmission of a report to law enforcement in violation of the plain meaning of SDCL 22-11-9(3). This Court concludes that a breathalyzer submission or other bodily substance submission as occurred in this case is not a communication or report for the purposes of the statute. Appellant's conduct may have been a violation of the terms of the 24/7 program, and she could face consequences for her conduct within the DWI case, but her conduct was not a specific, intentional, affirmative communication, account, or statement to law enforcement. Therefore, the magistrate court erred in finding a violation of SDCL 22-11-9(3), and Appellant's conviction is reversed and vacated.

[¶11.]    The State appealed.

**Decision**

***Whether the circuit court erred when it interpreted SDCL 22-11-9(3).***

[¶12.]        This Court reviews "issues of statutory interpretation de novo." *State v. Long Soldier*, 2023 S.D. 37, ¶ 11, 994 N.W.2d 212, 217 (citing *State v. Bettelyoun*, 2022 S.D. 14, ¶ 16, 972 N.W.2d 124, 129). Under this standard, no deference is given to the circuit court's interpretation of SDCL 22-11-9(3).

[¶13.]        "The purpose of statutory interpretation is to discover legislative intent." *Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d at 131 (quoting *State v. Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338). "[T]he starting point when interpreting a statute must always be the language itself." *Id.* (alteration in original) (citation omitted). "When the language in a statute is clear, certain[,] and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (quoting *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13). "Ambiguity exists when a statute 'is reasonably capable of being understood in more than one sense.'" *Fluth v. Schoenfelder Constr., Inc.*, 2018 S.D. 65, ¶ 16, 917 N.W.2d 524, 529 (citation omitted). "[A]ll penal statutes shall be construed according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22-1-1.

[¶14.]        In its entirety, SDCL 22-11-9 provides:

> Any person who:
>
> (1) Except as provided in § 22-11-9.2, knowingly causes a false fire or other emergency alarm to be transmitted to, or within, any fire department, ambulance service, or other government agency which deals with emergencies involving danger to life or property;

(2) Makes a report or intentionally causes the transmission of a report to law enforcement authorities of a crime or other incident within their official concern, knowing that it did not occur; or

(3) Makes a report or intentionally causes the transmission of a report to law enforcement authorities which furnishes information relating to an offense or other incident within their official concern, knowing that such information is false;

is guilty of false reporting to authorities. False reporting to authorities is a Class 1 misdemeanor.

[¶15.]    Biteler was charged under subsection three. The parties disagree on the meaning of the word "report." The State argues the circuit court "erroneously attributed a narrow interpretation to the statute that would require a formal or detailed oral or written statement or presentation in order for a person to be found in violation of [ ] SDCL 22-11-9(3)." In the State's view, "[a] violation of subsection 3 occurs when a person merely 'supplies' or 'gives' 'information relating to an offense or other incident within law enforcement's concern, knowing that such information is false.'" Biteler acknowledges the breadth of SDCL 22-11-9(3) but submits that it only criminalizes "affirmative acts of communication initiated by the defendant." She goes on to argue that her participation in the 24/7 program did not qualify as a report because it was, in her words, "not a voluntary act of communication to law enforcement. It [was] compliance, not communication."

[¶16.]    "Report" is not specifically defined in SDCL 22-11-9, elsewhere in SDCL Title 22, or the code. However, the language used in the remainder of SDCL 22-11-9(3) informs the meaning of the word "report." *See Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d at 131 (citation omitted) (explaining that when ascertaining the plain meaning of words in statutes, the Court must "read statutes as a whole").

SDCL 22-11-9(3) specifies that the report must contain "information relating to an offense or other incident within [law enforcement's] official concern[.]" The text of SDCL 22-11-9(3) does not distinguish between written or oral reports; thus, either will suffice. Moreover, the statute's text does not reflect any legislative intent about the form the report must take. Accordingly, we conclude the Legislature did not intend to limit the application of the word "report" to a specific medium or type of communication.

[¶17.] Based on the unambiguous language of SDCL 22-11-9(3), we conclude "report" means a communication, "which furnishes information relating to an offense or other incident within [law enforcement's] official concern." A violation of SDCL 22-11-9(3) occurs when any person: (1) makes a report or intentionally causes the transmission of a report; (2) to law enforcement authorities; (3) which furnishes information relating to an offense or other incident within law enforcement's official concern; (4) knowing that such information is false.

[¶18.] When Biteler enrolled in the remote breath program, she was instructed on how to use the portable PBT unit, including how to activate the photograph function and where to hold her head during a breath test. Consequently, she knew that when she blew into the machine, it would take a picture and automatically report the results along with that picture through AMS to law enforcement. The magistrate court found that Biteler falsified her breath test on December 9 by having another person blow into the machine while her face was before the camera, and Biteler has never challenged that finding. The result was a report that showed zero alcohol and falsely represented that it tested Biteler's

breath. The breath test results and photograph qualified as a "report" under SDCL 22-11-9(3) because it was a communication that furnished information of an incident within law enforcement's official concern—Biteler's compliance with 24/7 testing. AMS, functioning as a conduit between the 24/7 enrollee and law enforcement, relayed Biteler's breath test and photograph to law enforcement. Thus, because Biteler was aware that the purpose of the breath test and photograph was to provide information to law enforcement about whether she was complying with the court's orders, she "intentionally cause[d] the transmission of a report to law enforcement authorities[.]" *Id.* Because the elements required for a conviction under SDCL 22-11-9(3) were satisfied, the circuit court erred when it reversed the magistrate court. We reverse the circuit court's decision and reinstate the magistrate court's judgment of conviction.

[¶19.] JENSEN, Chief Justice, and DEVANEY, Justice, concur.

[¶20.] SALTER, Justice, and KERN, Retired Justice, concur specially.

[¶21.] GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.

SALTER, Justice (concurring specially).

[¶22.] I join the Court's opinion in full and write specially to address Biteler's argument that SDCL 22-11-9(3) contemplates only a unilateral, unprompted report by a defendant. In my view, this assertion runs afoul of two important concerns— both founded on the separation of powers doctrine. *See* S.D. Const. art. II ("The powers of the government of the state are divided into three distinct departments, the legislative, executive and judicial; and the powers and duties of each are

prescribed by this Constitution."). First, accepting Biteler's argument would add words to the statute that the Legislature did not include, which we do not do. *See Sioux Falls Shopping News, Inc. v. Dep't of Revenue & Regul.*, 2008 S.D. 34, ¶ 26, 749 N.W.2d 522, 527 ("This Court may not add language to a statute by 'judicial legislation.'" (quoting *Hannon v. Weber*, 2001 S.D. 146, ¶ 5, 638 N.W.2d 48, 49)).

[¶23.] And, second, Biteler's claim that her effort to deceive law enforcement officials should be treated merely as "compliance" and not a false "communication" is an invitation to preempt the executive-branch function of prosecutorial discretion. *See* S.D. Const. art. IV, § 3 (detailing how the executive branch "may, by appropriate action or proceeding . . . enforce compliance with any constitutional or legislative mandate"); *see generally United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case . . . ."); *Carson v. Gentry in and for Cnty. of Maricopa*, 574 P.3d 205, 215 (Ariz. 2025) (stating that "judicial oversight of prosecutorial discretion generally constitutes inappropriate interference with the broad discretion entrusted to the executive branch" (citation modified)).

[¶24.] At base, Biteler argues that we should avoid reading SDCL 22-11-9(3) in a way she believes would allow prosecutors to charge individuals who give false answers to law enforcement officers' questions. In the first instance, I think such a broad reading of our decision is not justified, but, in any event, interpreting SDCL 22-11-9(3) to immunize individuals from prosecution for lying to the police is not a valid *judicial* response to a question that requires nothing more than reading and applying a statute's plain and unambiguous text. *See In re Appeal by Implicated*

*Individual*, 2021 S.D. 61, ¶ 28, 966 N.W.2d 578, 586 (describing "the cardinal rule of statutory interpretation" as "simply read the text and apply it").

[¶25.] KERN, Retired Justice, joins this writing.